Central State University et al., Appellants, v. Public Utilities Commission of Ohio et al., Appellees.

(No. 76-1189—Decided June 15, 1977.)

*Mr. William J. Brown,* attorney general, *Mr. Stephen C. Fitch* and *Mr. Kenneth D. Gould,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Charles S. Rawlings* and *Mr. John W. Bentine,* for appellee Public Utilities Commission.

*Messrs. Jones, Day, Reavis & Pogue, Mr. Victor E. DeMarco, Mr. Lanty L. Smith, Mr. Roy F. Ryan, III, Mr. John W. Edwards, II, Mr. Donald W. Morrison, Mr. Charles B. Ballou* and *Mr. Ronald L. Orloff,* for intervenor-appellee Ohio Bell Telephone Co.

*Per Curiam.* Appellant Universities urge that the finding and order of the Commission as to the reasonableness of proposed rates and tariffs be reversed and remanded because either no evidence supports the finding, or the

finding is manifestly against the weight of the evidence. Appellants submit that Ohio Bell failed to present any evidence regarding the cost of connecting telephones purchased from a non-Bell company to centrex lines over which Ohio Bell enjoys control.

The record in this cause, however, does include testimony from two witnesses before the Commission relating to the significant expense to Ohio Bell of the service it provides the Kent State University College of Business. That college is the only facility yet served under a monthly rate applicable to all centrex station terminals for which connecting arrangements are furnished. Additionally, there was testimony that the centrex rates were established along the "value of service" principle, and that, based upon Ohio Bell's experience, the value of service is the thrust of costs.

Appellants assert that under the tariff proposed, Ohio Bell will charge $28 per line for the service hitherto received by Kent State for $8.40 per line, an alleged increase of 333 percent over the existing rate. However, when Kent State in 1973 originally requested this service, Ohio Bell proposed to charge $25.20 for the arrangement under the special equipment provision (Section 17) of its then-effective tariffs, rather than under the centrex provision (Section 35) of its prior tariffs. In a complaint case engendered by that proposal, Ohio Bell submitted evidence toward substantiating the $25.20 rate.

In that case, the Commission expressly identified the issue as whether Ohio Bell should charge for Kent State's additional use of a centrex system (by way of an interconnection of its College of Business system to the centrex system) in accordance with Section 35, or in accordance with Section 17 of Ohio Bell's tariff. The Commission found that the tariff language involved was unclear and thus decided that where the meaning of the provisions in a rate schedule is doubtful or ambiguous, it must be construed favorably to the subscriber. The Commission consequently held that Ohio Bell was required to offer the service requested by Kent State at the lower rate under the then-existing

centrex tariff.* The ruling of the Commission hinged upon the principle of construction.

In its application in the instant cause, Ohio Bell acted to cure the above-mentioned ambiguity by the creation of a new rate in the centrex tariff, applicable specifically to services similar to that furnished Kent State. The $28 rate proposed for centrex station terminals by Ohio Bell and approved by the Commission in 1976 was 11.1 percent above the $25.20 rate denominated for that service in 1973. This figure contrasts favorably with public hearing testimony that the total revenue increase requested in Ohio Bell's application is 33.8 percent.

Appellants assert also that the Commission order permitting charges for directory assistance calls and for local calls on a per-call basis, is arbitrary, unjust and unreasonable. Appellants question whether the Commission properly allowed Ohio Bell to institute a directory assistance and mandatory message unit charging plan without requiring Ohio Bell to afford subscribers detailed billing information relative thereto.

Ohio Bell's proposed tariff provides centrex subscribers with a single bill for all centrex stations employed by the subscriber. Thus, for example, there would be no means whereby a university might ascertain which caller placed a directory assistance call, or the date on which it was placed. The record below, however, includes testimony that detailed billing to centrex customers was considered by Ohio Bell. It indicates that each detailed billing, insofar as not impossible with present equipment, must entail considerable additional expense. (Testimony was taken indicating that although detailed billing for centrex subscribers whose switching equipment is located in an Ohio Bell central office is physically possible, such detailed billing for centrex subscribers with switching equipment located on the customer's premises is impossible with Ohio Bell's present equipment.)

---

*The Commission held that a $7.05 rate, rather than the $25.20 rate sought by Ohio Bell, was required. That rate, apparently, was raised to $8.40 in a later Ohio Bell general rate increase.

The record in the instant cause embraces probative evidence sufficiently demonstrating that the Commission's opinion and order is neither contrary to the manifest weight of the evidence nor so plainly unsupported thereby as to demonstrate misapprehension, error, or dereliction of duty. See *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58, 351 N. E. 2d 183; *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 330 N. E. 2d 1; *Cleveland* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 82, 209 N. E. 2d 424.

The order of the Commission is not unreasonable or unlawful and is affirmed.

*Order affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, P. BROWN and SWEENEY, JJ., concur.

W. BROWN and LOCHER, JJ., dissent.

LOCHER, J., dissenting. I can not concur in the judgment that the record in the instant cause embraces probative evidence sufficiently demonstrating that the 233 percent rate increase for the service of connecting non-Ohio Bell equipment to an Ohio Bell centrex system used by Kent State University (university) is neither contrary to the manifest weight of the evidence nor so plainly unsupported thereby as to demonstrate misapprehension, error or dereliction of duty by the commission.

In 1973, the university, in a cost-savings endeavor, installed the non-Ohio Bell equipment in its new College of Business building. Thereafter, a dispute arose as to whether the charge for connecting this equipment to a centrex system should be $25.20 per line, as proposed by Ohio Bell, or $7.05 per line, as urged by the university. The commission set a $7.05 per line charge. In this case, the commission has approved Ohio Bell's proposed rate of $28 per line. This represented a 233 percent increase for this specific rate contrasted with the average approved rate increase of 33.8 percent. Thus, the subject matter,

*inter alia,* of this case is a dispute over the proper rate for this service.

Ohio Bell is a quasi-public corporation and has possessed a virtual monopoly in this area. The public interest increases with a monopoly for, as such, its actions are not regulated by the strictures of the market place. Accordingly, it is proper that the utility bears the burden of proof to demonstrate the unreasonableness of the prior rates and the reasonableness of the proposed rates. *Mt. Vernon Telephone Corp.* v. *Pub. Util. Comm.* (1955), 163 Ohio St. 381. Ohio Bell presented no probative evidence demonstrating the need for this increase. While Ohio Bell does claim that the rate was determined by traditional value of service principles, what principles were used in arriving at this specific increase are not stated. Additionally, the subjective assertion of one witness that, under the prior rates, Ohio Bell would continue to receive inadequate revenue for this service, was not substantiated by any evidence capable of proving the validity of this contention.

It is interesting that, despite the apparent applicability of the criteria used by Ohio Bell in determining the services to be priced by cost of service information, Ohio Bell failed to conduct a cost of service study for this service. Thus, there is no objective evidence as to the cost Ohio Bell incurs in rendering this service. Nor does the 1973 proposed rate lend any justification to the present rate increase. While the $28 rate is only a 11.1 percent increase over the $25.20 rate, no evidence was presented in this cause relating to the development of Ohio Bell's originally proposed rate of $25.20.

Neither a subjective opinion nor a tenacious belief in the correctness of the $25.20 rate elucidates any basis of justification for this abnormally large percentage of increase. The record being void of any probative evidence to support the proposed rate increase for the centrex terminal system, I must respectfully dissent.

W. BROWN, J., concurs in the foregoing dissenting opinion.