Ford Motor Company, Appellant, *v.* Public Utilities Commission of Ohio et al., Appellees.

(No. 77-318—Decided December 7, 1977.)

*Messrs. Taft, Stettinius & Hollister* and *Mr. Lawrence D. Walker,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Kevin F. Duffy,* for appellee Public Utilities Commission.

*Messrs. Jones, Day, Reavis & Pogue, Mr. Robert W. Poore, Mr. John W. Edwards, II,* and *Mr. Robert W. Corp,* for appellee The East Ohio Gas Company.

*Per Curiam.* The gas in controversy in the instant cause was purchased by East Ohio and delivered to its customers prior to the April 27, 1976, effective date of R. C. 4905.302. That statute prohibits the passing-through of certain costs of gas purchased by gas companies and natural gas companies.

The costs that cannot be passed through from the utility to certain statutorily-identified consumers are the costs of its "special purchases." This prohibition is found in R. C. 4905.302(B), which provides:

"A purchased gas adjustment clause may not allow, and no such clause may be interpreted to allow, a gas company or natural gas company that has obtained an order from the public utilities commission permitting the company to curtail the service of any customer or class of customers other than residential customers, such order being based on the company's inability to secure a sufficient quantity of natural gas, to distribute the cost of any special purchase made subsequent to the effective date of such order, to the extent that such purchase decreases the level of curtailment of any such customer or class of customers, to any class of customers of the company that was

not curtailed, to any class of residential customers of the company, or to any class of customers of the company whose level of curtailment was not decreased and whose consumption increased as a result of, or in connection with, the special purchase."

R. C. 4905.302(B) directs that no gas utility which has obtained authority from the Commission to curtail service to certain classes of customers may use the provisions of the utility's purchased gas adjustment clause to distribute the cost of a "special purchase" of gas to three enumerated classes of customers, if that special purchase resulted in a reduction in the level of curtailment that had been imposed by the utility. The three classes of customers to which the costs of a special purchase may not be distributed include any class of customers that had not been curtailed, residential customers, and any class of customers whose level of curtailment had not been decreased and whose consumption had increased.

East Ohio, over the period relevant herein, had obtained Commission authorization to curtail service to certain classes of customers. The question to be determined is whether the prohibitions of R. C. 4905.302(B) apply to the recovery of the higher costs of certain East Ohio purchases.

Appellant believes the keystone of the Commission's December, 1976, orders, which orders appellant assails, was the Commission's finding that the East Ohio acquisitions made prior to April 27, 1976, were "special purchases," the distribution of whose costs is prohibited by R. C. 4905.302(B). The definition of "special purchases" is afforded by R. C. 4905.302(A)(2), which provides:

"For the purpose of this section, the term 'special purchase' shall mean any purchase of interstate natural gas, any purchase of liquified natural gas, and any purchase of synthetic natural gas from any source developed after the effective date of this section provided that this purchase be of less than one hundred twenty days duration and the price for this purchase is not regulated by the

federal power commission, for the purpose of this division, the expansion or enlargement of a synthetic natural gas plant existing at such date shall be considered a source so developed.''

Appellant points out that the definition afforded by R. C. 4905.302(A)(2) is in the present tense. Appellant concludes that the definition should not be presumed to encompass East Ohio purchases which had occurred prior to April 27, 1976.

Section 2 of Am. Sub. H. B. No. 1213 provides, in relevant part:

''On and after the effective date of this act, this act shall be applied to such costs as would not, under this act, be distributable to any particular class of customers of a gas company or natural gas company were they not payable by such class of customers under a provision, contained in a schedule approved by the public utilities commission prior to such date, that this act causes to be characterized as a purchased gas adjustment clause and that would have been so characterized, were this act to have been effective when the schedule in which the clause is contained was approved by the public utilities commission.''

Section 2 expressly ordains how and when the provisions of R. C. 4905.302 apply. The General Assembly makes the provisions of R. C. 4905.302 applicable to any costs of a special purchase made subsequent to the effective date of the utility's curtailment plan, which costs were outstanding on April 27, 1976, and which would have been distributed to all customers of the gas company under a purchased gas adjustment clause were it not for the enactment of R. C. 4905.302, which prohibits the distribution of those costs to the three enumerated classes of customers named in R. C. 4905.302(B). Because R. C. 4905.302 expressly was made applicable to costs (such as East Ohio's) incurred prior to April 27, 1976, East Ohio could not recover them through its purchased gas adjustment clause.

Appellant has proposed as its initial proposition of

law that R. C. 4905.302, relating to "special purchases" of gas, does not apply to gas purchased prior to April 27, 1976. In view of Section 2 of Am. Sub. H. B. No. 1213, this proposition of law is not meritorious.

Appellant avers further that gas companies and natural gas companies may collect from their customers only the rates and charges specified in their schedules at the time the service is rendered, and that a commission order changing the rates and charges for services rendered in the past is unreasonable and unlawful under R. C. 4905.32.[1]

By its order of December 15, 1976, the Commission authorized East Ohio to modify its purchased gas cost adjustment provisions in applying a special purchase adjustment to volumes of gas sold certain customers. That order authorized East Ohio to file tariffs consistent with the Commission's order, said tariffs becoming effective upon the Commission's approval. On December 22, 1976, the Commission issued an entry approving the tariffs which East Ohio had filed.

The adjustment embodied in the amended tariffs applied to volumes of gas sold subsequent to December 22, 1976. For services rendered prior thereto, East Ohio charged in accordance with its purchased gas adjustment clause as had been on file prior to December 22, 1976; it was for services rendered subsequent to that date that East Ohio charged pursuant to the modified purchased gas adjustment clause.

Appellant is misguided in premising this proposition of law upon its belief that because the new, post-December 22, 1976, charges must reflect costs incurred for past emergency gas purchases, East Ohio is in fact charging for services rendered in the past. Utility rates being based upon past costs, post-December 22, 1976, charges must

---

[1]R. C. 4905.32 provides, in relevant part:

"No public utility shall charge, demand, exact, receive, or collect a different rate, rental, toll, or charge for any service rendered, or to be rendered, than that applicable to such service as specified in its schedule filed with the public utilities commission which is in effect at the time."

reflect pre-December 22, 1976, costs to the utility. However, these charges properly attach to *services* provided appellant *subsequent* to December 22, 1976.

Appellant also contends that the Commission's jurisdiction is restricted to that specifically conferred by statute and that the Commission's authority to consider and approve a purchased gas adjustment clause for the recovery of "special purchases" is expressly limited under R. C. 4905.302(C)[2] to a uniform clause to be included in the rate schedules of all gas companies and natural gas companies subject to the Commission's jurisdiction.

R. C. 4905.302(D) provides, in pertinent part:

"Nothing in this section or any other provision of law shall be construed to mean that the public utilities commission may, in the event of any cost distribution allowed under this section, issue an order pursuant to which the prudent and reasonable cost of gas to a gas company or natural gas company of any special purchase may not be recovered by the company."

R. C. 4905.302(E) provides, in relevant part:

"The public utilities commission may not at any time prevent or restrain such costs as are distributable under this section from being so distributed, unless the commission has reason to believe that an * * * inaccuracy exists with respect to such a distribution or that the company has not accurately represented the amount of the cost of a special purchase, or has followed imprudent or unreasonable procurement policies * * *."

In the instant cause, the Commission allowed East Ohio to modify its purchased gas adjustment clause in order to effectuate these latter two statutory subsections.

---

[2]R. C. 4905.302(C) provides:

"The public utilities commission shall promulgate a purchased gas adjustment rule, consistent with this section, that establishes a uniform purchased gas adjustment clause to be included in the schedule of gas companies and natural gas companies subject to the jurisdiction of the public utilities commission and that establishes investigative procedures and proceedings including, but not limited to, periodic reports, audits, and hearings."

R. C. 4905.302(C) requires the Commission to promulgate a purchased gas adjustment clause for all gas companies consistent with the enactment; it does not prevent Commission approval of a purchased gas adjustment clause, or modification thereof, for a single company pending promulgation of a uniform purchased gas adjustment rule.

Appellant argues that the application of R. C. 4905.302 to the uncollected costs of gas purchased prior to the effective date thereof takes away or impairs vested rights acquired under existing law and creates new obligations, imposes new duties, and attaches new disabilities relative to past transactions, in violation of Section 28 of Article II of the Constitution of Ohio.[3]

Appellant's look to Section 28 of Article II of the Constitution of Ohio is premised upon its belief that the alleged right of East Ohio to collect for the emergency purchases from all customers, and the corresponding duty of these customers to pay the costs, became fixed when gas purchases were made and collection of their costs deferred. This premise is mistaken.

East Ohio's right to collect, and the duty of its customers to pay, the costs of the purchases were not fixed when those purchases were effectuated. There was no entitlement to collection, nor obligation to pay, until the volumes to which such additional costs were applied had been consumed.

Appellant claims that the Commission enjoys jurisdiction to increase rates and charges only if an application therefor is filed by a public utility under R. C. 4909.18,[4]

---

[3]Section 28 of Article II of the Constitution of Ohio provides:

"The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this State."

[4]R. C. 4909.18 provides, in relevant part:

"Any public utility desiring to establish any rate, joint rate, toll, classification, charge, or rental, or to modify, amend, change, increase, or reduce any existing rate, joint rate, toll, classification, charge or

rental, or any regulation or practice affecting the same, shall file a written application with the public utilities commission. Such application shall be verified by the president or a vice-president and the secretary or treasurer of the applicant. Such application shall contain a schedule of the existing rate, joint rate, toll, classification, charge, or rental, or regulation or practice affecting the same, a schedule of the modification amendment, change, increase, or reduction sought to be established, and a statement of the facts and grounds upon which such application is based. If such application proposes a new service or the use of new equipment, or proposes the establishment or amendment of a regulation, the application shall fully describe the new service or equipment, or the regulation proposed to be established or amended, and shall explain how the proposed service or equipment differs from services or equipment presently offered or in use, or how the regulation proposed to be established or amended differs from regulations presently in effect. * * *

"If the commission determines that such application is for an increase in any rate, joint rate, toll, classification, charge, or rental there shall also, unless otherwise ordered by the commission, be filed with the application in duplicate the following exhibits:

"(A) A report of its property used and useful in rendering the service referred to in such application * * *;

"(B) A complete operating statement of its last fiscal year, showing in detail all its receipts, revenues and incomes from all sources, all of its operating costs and other expenditures, and any analysis such public utility deems applicable to the matter referred to in said application;

"(C) A statement of the income and expense anticipated under the application filed * * *."

[5]R. C. 4909.19 provides, in relevant part:

"Upon the filing of any application for increase * * * the commission shall at once cause an investigation to be made of the facts set forth in said application and the exhibits attached thereto, and of the matters connected therewith. Within a reasonable time as determined by the commission after the filing of such application a written report shall be made and filed with the commission, a copy of which shall be sent by registered mail to the applicant * * * and to such other persons as the commission deems interested. If no objection to such report is made by any party interested within thirty days after such filing and the mailing of copies thereof, the commission shall fix a date within ten days for the final hearing upon said application, giving notice thereof to all parties interested. At such hearing the commission shall consider the matters set forth in said application and make such order respecting the prayer thereof as to it seems just and reasonable.

"If objections are filed with the commission within thirty days * * * the application shall be promptly set down for hearing of testimony be-

and only subsequent to an investigation and report required under R. C. 4909.19.[5]

The procedures and determinations required in a formal rate case heard pursuant to R. C. 4909.18 and 4909.19 are inapposite to the instant cause. Under the former, a rate increase application necessarily is accompanied by voluminous information encompassing the value of the utility's property, and by operating and financial statements requisite to ascertaining the utility's revenue and expenses. Under such cases, the Commission must launch an investigation into the application and exhibits attached thereto. In the instant controversy, the utility sought no revenue increase; it sought the modification of a schedule which allowed rates to increase and decrease independently of proceedings under R. C. 4909.18 and 4909.19.

R. C. 4905.26 provides, in relevant part:

"Upon complaint in writing against any public utility by any person, firm, or corporation, or upon the initiative or complaint of the public utilities commission, that any rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon

---

fore the commission or be forthwith referred to an attorney examiner designated by the commission to take all the testimony with respect to the application and objections which may be offered by any interested party. * * *

"When the taking of testimony is completed, a full and complete record of such testimony noting all objections made and exceptions taken by any party or counsel, shall be made, signed by the attorney examiner, and filed with the commission. Thereafter, the commission shall make such order respecting the prayer of such application as seems just and reasonable to it."

complaint of a public utility as to any matter affecting its own product or service, * * * the commission shall fix a time for hearing and shall notify * * * the public utility thereof * * *."

Under R. C. 4905.26, jurisdiction reposes in the Commission to determine whether a schedule of a public utility has been in violation of law.

Appellant urges finally that the prohibitions of R. C. 4905.302 apply only if a "special purchase" decreases curtailment, and that an order of the Commission applying R. C. 4905.302 when there is no evidence showing that such a purchase caused a curtailment decrease is unlawful and unreasonable. Appellant declares that there is no competent evidence even tending to show that the purchases caused a decrease in curtailment for any of intervening-appellee's customers.

We disagree with appellant's appraisal of the evidence. Furthermore, the Commission finding will not be disturbed unless manifestly against the weight of the evidence and so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 404, 330 N. E. 2d 1 (paragraph eight of the syllabus), certiorari denied 423 U. S. 986 (1975); *Central State University* v. *Pub. Util. Comm.* (1977), 50 Ohio St. 2d 175, 179, 364 N. E. 2d 6.

The orders of the Commission being neither unreasonable nor unlawful are affirmed.

*Orders affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and McCORMAC, JJ., concur.

McCORMAC, J., of the Tenth Appellate District, sitting for LOCHER, J.