Marshall, C. J.
 

 On November 22, 1926, the Ohio Power Company entered into a contract with the Suburban Power Company, whereby the Ohio Company contracted to sell, and the Suburban Company contracted to purchase, electric energy for a period of ten years for purposes of resale within certain prescribed territory in the state of Ohio. The Suburban Company has a large number of customers, some of whom are private individuals, and others of whom are power distributing companies, distributing to their own customers. The total number of consumers is approximately 12,000. The contract provides that electric energy shall be furnished subject to the regularly filed standard terms and conditions as set forth in schedules on file with the public utilities commission. The schedules reserve the right on the part of the Ohio Company to discontinue service for nonpayment of bills monthly.
 
 *277
 
 There was apparently no disagreement between the parties to the contract concerning the price to be paid for a period of several years, until the summer of 1929, when the Suburban Company refused to pay upon the rates theretofore charged and paid, not because the bills were not correctly computed, but because of the claim that for purposes of resale the rates should be less than half those which had been charged and paid for several years. Qn payment being tendered on the reduced rates, the Ohio Company served notice that unless the full amount claimed should be paid by October 15,1929, it would discontinue service on that date because of non-payment of bills. Thereupon the Suburban Company invoked the authority of the public utilities commission, and the commission cited both companies to appear before it, under authority of Section 614-32, General Code, and the matter coming on for hearing October 21, 1929, the parties having reached a temporary agreement, the notice of the Ohio Company was withdrawn, and the proceeding was therefore indefinitely continued. The temporary agreement was not performed by the Suburban Company, and again, on May 1, 1930, the Ohio Company served notice of discontinuance, whereupon the commission issued another order, under date of May 13, 1930, and on May 20 a hearing was conducted; but no evidence was submitted, other than the contract and the schedules and the testimony of one Sweezy, who is connected with the Suburban Company, and who endeavored to interpret the contract and schedules. The order of May 20 recited that the cause was heard in order to determine the schedules of the power company applicable to the service rendered to
 
 *278
 
 the Suburban Company, and found that for the electric energy furnished the rates and charges set forth in the schedules published and on file in the public utilities commission are applicable, and ordered that:
 

 “In the interest of preserving the rendition of electric service by said companies to their consumers situated at various points throughout the state of Ohio that said The Suburban Power Company and said The General Light & Power Company be, and hereby they are notified, directed and required forthwith to make payments for service rendered by said The Ohio Power Company in accordance with the schedules applicable as aforesaid and to take such steps as will remove the hazard of the interruption and assure the permanent continuance of their service to their consumers, save and except as otherwise authorized under the statutes in such case made and provided. It is further
 

 “Ordered, that said The Ohio Power Company be and hereby it is notified, directed and required to continue its connection with and furnishing of electric energy under its lawfully published schedules to said The Suburban Power Company and said The General Light & Power Company.”
 

 The commission proceeded under the authority of Section 614-32, General Code, which confers upon the commission the power to act in emergencies to prevent injury to the business or interests of the public. Whether or not that section by its terms authorizes emergency action on the part of the commission under the circumstances of this case need not be decided or even considered by this court. The parties submitted themselves to the jurisdiction
 
 *279
 
 of the commission, and, upon hearing, it found the schedules under which the service was rendered to be applicable to that kind and character of service. In the absence of a special contract, the technical terms and conditions of the schedules would control. Without such contract, an analysis of the schedules, and their application to the Idnd and character of service rendered, must necessarily be made. It is conceivable that a contract might be so drawn as to call for its interpretation to determine which schedules apply. A reading of the order of the commission under date of May 20, 1930, does not make it entirely clear whether they found that the schedules were technically applicable, or whether, on the other hand, they found that the parties had placed their own interpretation upon the schedules by their voluntary agreement and by having followed that agreement without question in a course of dealing through several years. If the latter course was followed, we are of the opinion that it was justifiable. It would not follow that an illegal rate might be imposed indefinitely, and the way has been open at all times to the Suburban Power Company to invoke the authority of the commission, as defined by Section 614-21, General Code, to determine whether the rate charged is unjust, unreasonable, unjustly discriminatory, or unjustly preferential, or in violation of law. It does not definitely appear from this record how this matter was originally brought to the attention of the public utilities commission. It is quite certain that the Suburban Power Company did not seek the aid of the commission in accordance with Section 614-21, General Code.
 

 Error has been prosecuted from the order of the
 
 *280
 
 commission to this court by the Suburban Power Company, No. 22440. Counsel for the Suburban Company argue the matter in this court on technical grounds, as though the case had been presented to the commission under authority of Section 614-21. This court will not review the record to determine the legality or the reasonableness of the rates and charges, for the reason that that question was not considered by the commission, or even presented to it for its consideration and determination. It does appear that instead of seeking a revision of the rates and charges, the Suburban Company took the law into its own hands and arbitrarily determined that the rates were more than twice as much as they should be, and tendered an amount which it believed to be in accordance with the contract and schedules. This course of conduct was continued until the Suburban Company became debtor to the Ohio Company in the sum of more than $140,000. That amount still remains unpaid.
 

 Manifestly, neither the commission nor a court of equity could lawfully order the Ohio Company to perform its part of the contract, at the suit of the Suburban Company, while the Suburban Company is flagrantly violating its part of the contract, and this is more emphatically true by reason of the reservations in the published schedules of the right to discontinuance of service for nonpayment of bills. To make this position still stronger a fair interpretation of the record discloses that the Suburban Company is probably insolvent.
 

 Sections 504-2 and 504-3, General Code, confer certain powers upon the commission to determine whether a public utility may abandon service which
 
 *281
 
 has been established for not less than five years, and it is not doubted that in a proper case the commission may order the continuance of service during the full term of the contract, where the service has been legally established, but it must be held to be a condition to such order of continuance that a party contracting for the service shall observe the conditions of the contract on his part to be performed. Further reference to these sections will be made in disposing of the other features of this error proceeding.
 

 The Suburban Company argues that the contract is illegal because of alleged defects in the published schedules, in that they do not make provision for classifications and charges for service of each and every kind rendered and furnished by it, as provided by Sections 614-16 and 614-17, General Code, disposing of the other features of this error provides :
 

 “All such contracts, leases, purchases, sales or consolidations not made pursuant to the provisions of this act or contrary hereto shall be void and of no effect.”
 

 It is therefore the theory of the Suburban Company that the schedules are illegal and that the contract for service in accordance with those schedules is void, and that therefore the parties should begin all over again under rates to be fixed by the public utilities ■ commission under authority of Section 614-21. It is one answer to this argument that the Suburban Company has never invoked the provisions of Section 614-21. It is another answer to this argument that Section 614-18 provides that no public utility shall charge a different rate than that spe
 
 *282
 
 cified in its published schedules, and, until amended schedules are published, the utility has no choice except to charge the rates provided by the schedules on file. We find, therefore, that the order of the commission, so far as it affects the Suburban Company, is not unreasonable or unlawful.
 

 The Ohio Power Company prosecutes error from the same order- of the commission, being cause No. 22477, on the ground that the commission is without power or authority to compel a public utility to continue to furnish its product to a consumer while such consumer fails and refuses to make payment in accordance with the contract for such product. All of the discussion in cause No. 22440 has application to this case. It may further be added that the authority invested in the public utilities commission by Sections 504-2 and 504-3, providing for abandonment and withdrawal of the public utility service under certain conditions and upon certain procedure, does not in any event extend to compulsory continuance without reciprocal performance on the part of the purchasers and consumers of such product and service.
 

 This controversy does not call for an enumeration of all of the circumstances under which a commission might authorize the abandonment and withdrawal of service, but it is sufficient to say that the circumstances of this controversy are such that the Suburban Company has forfeited all rights under its contract, and, as to the Suburban Company, the Ohio Power Company owes no obligations of further performance pursuant to the contract of November 22,1926.
 

 The commission in its order of May 20,1930, rec
 
 *283
 
 ognized the Suburban Power Company only as a means to an end. The electric current to be supplied to the 12,000 consumers could only be supplied through the instrumentality of the Suburban Power Company. The commission therefore was proceeding pursuant to its powers in ordering a continuance of that service during such period as payment could be made to the Ohio Power Company upon the prevailing schedules.
 

 The commission was in error in ordering such payment for an indefinite period. The Ohio Power Company, already having an unpaid account in the sum of approximately $140,000, is not bound to continue service for an indefinite period, even though being paid for current service.
 

 The order of the commission will therefore be modified so as to order the continuance of the service for only a reasonable period to enable the consumers to make other provision for electric current.
 

 The cause will be remanded to the commission to determine what would be a reasonable period of time for the consumers to acquire electric current from other sources of supply.
 

 In No. 22440, the order of the commission will he affirmed.
 

 In No. 22477, the order of the commission will he modified and the ca/use remanded.
 

 Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.
 

 Jones, J., not participating.