CITY OF COLUMBUS, APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO ET AL., APPELLEES.

(No. 78-679—Decided May 9, 1979.)

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick M. McGrath* and *Mr. John W. Bentine,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. John W. Rudduck,* for appellee.

*Messrs. Porter, Wright, Morris & Arthur, Mr. Samuel H. Porter, Mr. Curtis A. Loveland* and *Mr. William J. Kelly, Jr.,* for intervening appellee Columbus & Southern Ohio Electric Company.

*Per Curiam.* The issue raised by the instant cause is whether the rate increase levied against the utility's Columbus customers is reasonable and lawful. More specifically, the question is whether there is sufficient probative evidence in the record to support the commission's choice of an allocation formula and its valuation of the utility's "used and useful" property.

This court's standard of review for a determination by the Public Utilities Commission is set forth in R. C. 4903.13.

R. C. 4903.13 provides:

"A final order made by the Public Utilities Commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

Under the "unlawful or unreasonable" standard specified in R. C. 4903.13, this court will not reverse or modify an opinion and order of the Public Utilities Commission where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty. *Delphos* v. *Pub. Util. Comm.* (1940), 137 Ohio St. 422, 424; *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, paragraph eight of the syllabus; and *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58, paragraph two of the syllabus.

The two commission practices challenged by the city in the instant cause are its adoption of an allocation formula based on a non-verifiable assumption and its equation of "used and useful" property with property listed on the utility's books as "in service" property. There is sufficient probative evidence in the record to show that neither practice was manifestly against the weight of the evidence and to support, as reasonable and lawful, the commission's final order.

The commission adopted an allocation formula based, in part, on the non-verifiable assumption that the relationship between the average and peak demands of city and non-city residents is the same.[2] The expert who employed that formula in the utility's application testified, in effect, that the formula's reliance on the assumption did not make the formula unfair to Columbus residents. A staff expert concurred in that conclusion, and the staff report, which was admitted in evidence, concluded that the allocation factors were "generally reasonable and appropriate." Given the above evidence in support of the commission's choice of an allocation formula, we find that choice to be reasonable and lawful.

There is also sufficient probative evidence to support as reasonable and lawful the commission's reliance on utility records of property "in service" to determine the value of utility property "used and useful." At the hearing, the utility's controller testified that the utility believed that the property listed on its books as "in service" was "used and useful." In addition, the staff report concluded that there were "no significant discrepancies" between the company's property records and "the actual physical property."[3] The commission's reliance on utility records in the instant cause was reasonable and lawful.

---

[2] It was impossible for the commission to determine with certainty whether the relationship between the average and peak demands of Columbus and non-Columbus customers is the same because most Columbus and jurisdictional utility customers do not have demand meters.

[3] The staff report, standing alone, would have been sufficient to support the commission's equation of "in service" property with "used and useful" property. See *Akron* v. *Pub. Util. Comm.* (1978), 55 Ohio

The practices underpinning the commission's final order being reasonable and lawful, the order is affirmed.

*Order affirmed.*

HERBERT, W. BROWN, SWEENEY and HOLMES, JJ., concur.

CELEBREZZE, C. J., P. BROWN and LOCHER, JJ., dissent.

LOCHER, J., dissenting. I dissent from the majority opinion in the instant cause because the utility company has failed to meet the requisite burden of proof pursuant to R. C. 4909.39 and 4909.15. It is axiomatic that a utility has the burden of proof that the property which is sought to be included in its statutory rate base is used and useful. *Mt. Vernon Telephone Corp.* v. *Pub. Util. Comm.* (1955), 163 Ohio St. 381.

In the cause *sub judice,* the majority opinion admits that the crux of the commission's adoption of the allocation formula was based upon a "non-verifiable assumption" that the relationship between the average and peak demands of the city and non-city residents is the same.

The staff, in its Report of Investigation, recognized that, if the load factor for residential, small and medium general service customers is reasonably equal, then the allocation to Columbus would be acceptable.

The commission mechanically adopted this "non-verifiable load factor assumption," even though individual demand meters could have been used to determine the load factors. Demand meters were not used for the purpose of sampling Columbus customers *vis-a-vis* other Columbus & Southern Ohio Electric Company (C&SOE) customers. Thus, by the use of demand meters, this "non-verifiable assumption" could easily have been verified.

---

St. 2d 155, 158. However, in these days of spiraling utility rates and the increasingly desperate plight of those living on fixed incomes, it is to be hoped that utilities will support their applications for increased rates with more than the minimal probative evidence required under the "unlawful or unreasonable" standard.

It is well known, and should be especially applicable to monopolies which have a fiduciary duty to the public, that the applicant has the burden of proving all the material allegations in the complaint. In *Ohio Motor Freight Tariff Committee, Inc.,* v. *Pub. Util. Comm.* (1959), 169 Ohio St. 172, 177, this court noted the commission's report, which, in pertinent part, stated:

"* * * [I]t is elementary that any party complainant before this commission assumes the duty and obligation of proving all of the material allegations contained in his original complaint. * * *"

C&SOE had the burden of proof to show that the allocation methodology and resulting valuation were reasonable, but it failed to produce any credible evidence supportive of the method of valuation. The lack of specific cost studies and direct assignments by C&SOE make the reasonableness of the proposed allocation methodology questionable.

In *Mt. Vernon, supra,* the utility could not prove the valuation of its property because of the lack of reliable depreciation information, and, accordingly, the commission dismissed the rate increase application. This court, at page 389, noted that:

"* * * An order by the commission under such circumstances would have required mere conjecture on its part * * *"

Applying the *Mt. Vernon* analysis to the instant cause, the commission should have dismissed the complaint, because it had but a "mere conjecture" as to the reasonableness of the C&SOE load factor, which was the heart of the application for a rate increase.

P. Brown, J., concurs in the foregoing dissenting opinion.