MASURY WATER COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(No. 78-1213—Decided May 16, 1979.)

148

*Luchette, Hoffman & O'Brien, Co., L. P. A.,* and *Mr. James E. Hoffman, Jr.,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Jonathan L. Heller,* for appellee.

*Per Curiam.* Initially, appellant challenges the nine percent rate of return allowed on its capital structure. Appellant argues that the weight of the testimony submitted with respect to its cost of equity demonstrates that a 14 to 16 percent rate of return was warranted. Appellant avers that the commission erred in accepting a 10 to 12 percent cost of equity calculation, since this recommendation was submitted by commission staff witnesses whose expertise in the field was not as extensive as appellant's expert.

This court with regard to evidentiary matters does not review a finding and order of the commission *de novo*. Where conflicting evidence is presented to the commission with regard to a matter at issue, the commission's determination will not be disturbed unless the party who challenges that finding demonstrates that it is manifestly against the weight of the evidence and so clearly unsupported by

the record in the cause as to demonstrate misapprehension, mistake, or willful disregard of duty. *Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 57 Ohio St. 2d 78, 386 N. E. 2d 1343; *Ford Motor Co.* v *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 142, 152, 370 N. E. 2d 468.

Appellant maintains further that the commission's exclusion of short-term debt from its computation of the appropriate rate of return for appellant's capital structure was erroneous.

R. C. 4903.13[1] does not authorize this court to reverse an order of the commission which is reasonable and lawful. The commission's function in this cause was to determine a just and reasonable rate for appellant, which the commission calculated through an analysis of appellant's capital structure, using a cost of capital approach to ascertain the appropriate rate of return. Although this analysis included a determination of the weighted cost of embedded long-term debt, and an analysis of the cost of common equity, the commission did not include short-term debt as part of appellant's capital structure.

Upon an examination of the record, we conclude that the exclusion of short-term debt in ascertaining the cost of capital was neither unlawful nor unreasonable. The commission's approach was in conformity with testimony to the effect that capital structure, by generally accepted definitions, does not include short-term debt.

Appellant argues further that in ascertaining the cost of equity for a utility which is owned by an out-of-state parent company, it is impermissible for the commission to use the more favorable capital structure of the parent corporation to determine the cost of equity for the utility.

In calculating the cost of equity, the commission normally utilizes a discounted cash flow analysis of the utility

---

[1]R. C. 4903.13 states, in applicable part:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

under scrutiny in order to determine a reasonable rate of return on equity. However, in the present cause, this approach was not applied to appellant since it was a non-publicly traded company. As a result, the commission's staff calculated the cost of equity for appellant in the first instance, and then analyzed the cost of equity for Consumers by employing a discounted cash flow analysis. This analysis was subsequently used merely as a reference check for the commission's earlier computation of appellant's cost of equity calculated to be at between 10 and 12 percent. Under these circumstances, it is clear that the commission did not substitute the parent company's cost of equity for that of appellant.

Appellant complains further that where the testimony of the commission staff is to the effect that the cost of equity is 11.5 to 12.3 percent, it was unreasonable and unlawful for the commission to allow a 10 to 12 percent cost of equity.

It is sufficient to note that the staff testimony submitted with regard to the 11.5 to 12.3 percent cost of equity resulted from the staff's discounted cash flow analysis of the capital structure of Consumers, and was not the staff recommendation with regard to appellant's cost of equity. The staff recommendation in that regard was a 10 to 12 percent rate of return. *Cf. Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 413, 330 N. E. 2d 1.

Appellant argues additionally that the commission, in determining the rate base of a utility under the original cost less depreciation method, must provide not only a reasonable rate of return at the time of investigation, but also for a reasonable time in the future, which warrants the allowance of a one percent premium adjustment in appellant's cost of capital to compensate investors for attrition due to inflation.

Under the facts of this cause, the commission properly disallowed the attrition adjustment requested by appellant. "Attrition" has been defined as the tendency of a rate of return to diminish in a period of rising costs

primarily as a result of increasing construction costs and the fact that bases for calculating the rate of return are made in the year prior to that for which the return is calculated. *State* v. *New Jersey Bell Tel. Co.* (1959), 30 N. J. 16, 152 A. 2d 35, 41. Here, the commission determined that the evidence presented did not demonstrate that such an adjustment was warranted. The commission stated, ''The magnitude of such an adjustment would, of course, be difficult to quantify and the record does not provide a proper basis for defining the size of any such adjustment. * * * [A]djustments of this nature may well serve to diminish the incentive for prudent management and for efficiency in operation.'' In addition, the commission has demonstrated that in causes such as the present one, where the cost of capital approach is related to the actual or net investment of appellant's capital structure and is utilized to determine for example the ''fair and reasonable'' return of book equity, this approach by definition includes a component which represents a realization by investors in the market place that future inflationary pressures may have an adverse effect on the profitability of the enterpise. This observation is buttressed by the testimony of appellant's own expert witness, who included in his analysis of appellant's cost of capital a six to seven percent increment which represented the amount investors roll into the total cost of capital to ''offset anticipated inflation.''

Appellant also challenges the commission's determination that the value of property which constitutes appellant's rate base amounts to $1,125,495.

Where the commission, in a cause properly before it, fixes the rates or charges for a utility and renders an order to that effect, a presumption arises that the commission's determination is fair and reasonable. A party who contends otherwise on appeal to this court has the burden of showing that it is unjust, unreasonable, or unlawful. *Franklin Co. Welfare Rights Org.* v. *Pub. Util. Comm.* (1978), 55 Ohio St. 2d 1, 12-13, 377 N. E. 2d 990. Our review of the proceedings below shows that this presumption has not been overcome with regard to the commission's

evaluation of appellant's rate base property.

Finally, appellant urges that the commission's allowance of $91,277 for construction work in progress (CWIP) was erroneous. It is contended that the record shows that all CWIP had been completed as of the "date certain," and, therefore, the total cost of the construction projects ($100,000) should have been included by the commission as a reasonable allowance.

R. C. 4909.15(A)(1) expressly confers upon the commission the discretion to "permit a reasonable allowance for construction work in progress" if it first determines after a physical inspection that the construction project is at least 75 percent complete.[2] The commission has demonstrated that the construction projects in question were more than 75 percent complete as of the "date certain," and therefore allowed in the rate base the entire amount of the costs associated with the projects it found to be completed as of the "date certain" ($91,277). The procedure employed by the commission, which excluded the costs associated with construction projects it determined uncompleted as of the "date certain," was permissible.

Appellant's other arguments are not well-taken and the order of the commission, being neither unreasonable not unlawful, is hereby affirmed.

*Order affirmed.*

CELEBREZZE, C. J., HERBERT, KEEFE, P. BROWN, SWEENEY, POTTER and HOLMES, JJ., concur.

KEEFE, J., of the First Appellate District, sitting for W. BROWN, J.

POTTER, J., of the Sixth Appellate District, sitting for LOCHER, J.

---

[2]With regard to construction work in progress, R. C. 4909.15(A)(1) provides that:

"* * * The commission may, in its discretion, permit a reasonable allowance for construction work in progress but, in no event, may any allowance for construction work in progress be made by the commission until it has determined, after a physical inspection, that the particular construction project is at least seventy-five per cent complete."