OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Consumers' Counsel *v.* Pub. Util. Comm. (1985),
18 Ohio St. 3d 264.]

(No. 84-1789—Decided July 24, 1985.)

*William A. Spratley,* consumers' counsel, *G. James Van Heyde, David C. Bergmann, Beth A. Burns* and *Lawrence F. Barth,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *John L. Shailer,* for appellee.

*Frances McGovern* and *Anthony J. Alexander,* for intervening appellee.

WRIGHT, J. The issue presented by this appeal is whether the commission's order authorizing Ohio Edison's accrual of AFUDC for the period of time between the date that the facilities were put in service and the date that Ohio Edison filed the rate-increase application (the "date certain") is unlawful or unreasonable. This appeal does not concern the propriety of the proposed accounting change as it affects matters other than ratemaking, the inclusion of the labor and material costs in Ohio Edison's rate base, the accrual of AFUDC prior to the date that the project was placed into service, or the accrual of AFUDC for the period of time between the date certain and the date that the rate increase, if granted, becomes effective.

Appellant would have us treat the costs in question as elements of operating expense that will be examined periodically in test periods. The commission has ruled that the costs in question should be capitalized and included in Ohio Edison's rate base and thus be recovered over a period of their useful life.

This court must affirm an order of the commission if it is not unreasonable or unlawful. R.C. 4903.13. *Ohio-American Water Co.* v. *Pub. Util. Comm.* (1981), 68 Ohio St. 2d 104, 106 [22 O.O.3d 331]. The determination of a rate is presumed to be fair and reasonable. See *Masury Water Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 147, 151 [12 O.O.3d 163]. Therefore, appellant OCC has the burden of proof. *Id.* Under the "unlawful or unreasonable" standard, this court will not reverse or modify an order of the commission "where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty." *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104 [12 O.O.3d 112].

We are required to reverse the commission's order if it has exercised jurisdiction beyond that conferred by statute. *Ohio Public Interest Action Group* v. *Pub. Util. Comm.* (1975), 43 Ohio St. 2d 175 [72 O.O.2d 98], paragraph five of the syllabus. R.C. 4909.15(A) states in part: "The public utilities commission, when fixing and determining just and reasonable rates, fares, tolls, rentals, and charges, shall determine: * * * (2) A fair and reasonable rate of return to the utility * * *." R.C. 4909.15(A)(1) provides that in fixing rates, the commission shall determine and consider "[t]he valuation as of the date certain of the property of the public utility used and useful in rendering the public utility service for which rates are

to be fixed and determined. The valuation so determined shall be the total value as set forth in division (K) of section 4909.05 of the Revised Code [pertaining to the valuation of property], *and a reasonable allowance for materials and supplies and cash working capital*, as determined by the public utilities commission." (Emphasis added.) Accordingly, in *Babbit* v. *Pub. Util. Comm.* (1979), 59 Ohio St. 2d 81 [13 O.O.3d 67], at paragraph two of the syllabus, this court held: "Pursuant to R.C. 4909.05 and 4909.15(A)(1), the rate base consists of the actual net investment in the assets of the utility, including the original cost of long term assets, less depreciation and contributions of capital plus short term assets in the form of cash working capital."

Both sides agree that the proper interpretation of R.C. 4909.05(E) is dispositive of this case. This is so because the issue, essentially, deals with the cost of property acquisition. R.C. 4909.05 states, in pertinent part:

"The public utilities commission shall prescribe the form and details of the valuation report of the property of each public utility or railroad in the state. Such report shall include all the kinds and classes of property, with the value of each, owned or held by each public utility or railroad used and useful for the service and convenience of the public. Such report shall contain the following facts in detail:

"* * *

"(E) The original cost of all other kinds and classes of property used and useful in the rendition of service to the public. *Such original costs of property, other than land owned in fee, shall be the cost, as determined to be reasonable by the commission, to the person that first dedicated the property to the public use and shall be set forth in property accounts and subaccounts as prescribed by the commission.*" (Emphasis added.)

Appellant argues that the emphasized portion of the statute prohibits accrual of AFUDC between the in-service date and the date certain because "the 'original cost' of a facility can only include costs reasonably incurred up to the point where the facility is dedicated to public service." This interpretation is erroneous.

R.C. 4909.05(E) was adopted by the General Assembly to prevent utility companies from inflating rate bases by engaging in artificial transactions that established artificial values for buildings and property. That section establishes which entities' costs are to be utilized in establishing a rate base. R.C. 4909.05(E) does not affect the timing of property valuation. Therefore, appellant's interpretation of R.C. 4909.05(E) must be rejected.

The position adopted by appellant would preclude both capitalization of AFUDC costs and inclusion of such cost in Ohio Edison's rate base. This result would be at war with the goals of public utility regulation because current consumers would be charged for benefits that will ultimately favor future consumers. This problem is illustrated by the following example which assumes that the financing of the construction will be paid-off over a fifteen-year period, but that the new facilities will have a useful life of fifty

years. According to appellant's position, the capital costs would be expensed over a fifteen-year period, but the benefits would be received by consumers over a fifty-year period. Thus, current consumers would be subsidizing future consumers. As stated, this result would be at odds with the goals of public utility regulation. If we adopt appellee's position, the capital costs will be amortized and charged to consumers over the fifty-year life of the equipment. We believe that this is a sensible and equitable result.

Both parties cite *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 6 Ohio St. 3d 377, in support of their positions. That case involved the exact issue presented in the instant case, except that the accounting change was in the context of bookkeeping as opposed to a ratemaking context. Although we expressly avoided examining the accounting change in the ratemaking context since that issue was not before the court, we held that, for bookkeeping purposes, AFUDC may be accrued for the period beyond the in-service date. As noted in the cited case, bookkeeping methodology and ratemaking procedures are not equivalent. However, as noted by both the majority and the minority in that case, ratemaking and bookkeeping are not easily divorced. Appellant does not challenge the holding in the above case. Today, we extend that case to its natural and logical conclusion and hold that the costs in question may be included in Ohio Edison's rate base.

The commission is given latitude to include capital costs in property valuation. R.C. 4909.15(A)(1); 4909.15(D)(2)(a). Further, the commission is given discretion in determining the cost of property by the language, "cost, as determined to be reasonable by the commission" in R.C. 4909.05(E).

We hold that the commission's order allowing the AFUDC accrued during the period between the date that the facility was placed in service and the date certain to be included in the utility's rate base is not unlawful or unreasonable. Therefore, we find that the commission's order is not unreasonable or unlawful, and it is hereby affirmed.

*Order affirmed.*

SWEENEY, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

CELEBREZZE, C.J., and LOCHER, J., dissent.

LOCHER, J., dissenting. AFUDC, at the time of the commission entry of March 23, 1983, was not expressly recognized as an exemption from the test-year concept. Inclusion of such costs in the rate base realizes the fears presaged in my dissent to *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 6 Ohio St. 3d 377, 380. It is now apparently well-established that a utility may circumvent the test-year concept by first modifying a questionable

"expense" for "accounting purposes." Once modified, the "expense" finds its way into the rate base, transforming form into costly substance for the rate-paying consumers of this state. This court then rubber stamps the commission determination as "not unreasonable or unlawful."[1]

Parenthetically it is instructive to note that the General Assembly has only recently recognized AFUDC in the inclusion of proper valuation for ratemaking purposes (R.C. 4909.15 as amended effective April 10, 1985). Moreover specific provision is made for application of the amendment only to applications for rate increases filed *after* May 23, 1984. On this basis there can be no question that the instant utilization of AFUDC in the rate base is inappropriate.

Accordingly I dissent for the reasons set forth hereinabove and those reasons previously set forth in my dissent in *Consumers' Counsel, supra.*

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.

---

[1] The problem with always deferring to the commission's discretion is raised in Note, Government Regulation and Monopoly Power in the Electric Utility Industry (1983), 33 Case W. Res. L. Rev. 240, 264-265:

"* * * [R]egulators, after extended exposure to an industry through the regulatory process, tend to sympathize with the industry point of view, despite their statutory obligation to represent the public interest."

See, also, Note, Regulation, Competition, and Your Local Power Company (1974), 18 Utah L. Rev. 785, 796.