CONSOLIDATED RAIL CORPORATION, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Consolidated Rail Corp. *v.* Pub. Util. Comm. (1989), 47 Ohio St. 3d 81.]

(No. 87-1664—Submitted September 26, 1989—Decided December 20, 1989.)

82

*Skulina & McKeon, Thomas R. Skulina* and *Sheila A. McKeon,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *David C. Champion,* for appellee.

H. BROWN, J.  In *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104, 12 O.O. 3d 112, 113, 388 N.E. 2d 1237, 1238, we held that this court will not disturb an opinion or order of the commission "where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty." The issue before this court is whether there is sufficient probative evidence in the record to support the commission's allocation of sixty percent of the in-

stallation costs to Richland County and forty percent to Conrail. For the reasons which follow, we find the evidentiary record insufficient to support the commission's allocation.

R.C. 4907.47 governs commission hearings on the subject of dangerous rail-highway grade crossings. Once the commission has determined that a crossing is "so dangerous as to require additional protective devices," the statute requires that the commission apportion the cost of installing protective devices between the railroad and the public. The statute lists the factors which must be considered:

"In apportioning the cost of any such device the commission shall consider factors of volume of vehicular traffic, volume of train traffic, train type and speed, limitations of view and the causes thereof, savings, if any, which will inure to the railroad as the result of such installation, benefits to the public resulting from the reduction of hazard at the crossing, the probable cost of the installation, the future cost to the railroad of maintaining any such device, and *any such other special factors and conditions as in the opinion of the commission are relevant. * * *"* (Emphasis added.) R.C. 4907.47.[1]

Conrail contends that the commission's allocation of forty percent of the installation costs to the railroad is unsupported by the record. It argues that the ninety percent-ten percent allocation recommended by the attorney examiner is the consequence of a "longstanding" rule which recognized that the motoring public is the primary beneficiary of grade crossing improvements. See *Columbus* v. *New York Central RR. Co.* (July 12, 1963),

PUCO No. 31,445, unreported, at 5 ("It is obvious that any benefit from a grade crossing installation accrues practically in its entirety to the traveling public and not to the railroad."); see, also, *New York, Chicago & St. Louis RR. Co.* v. *Pub. Util. Comm.* (1964), 176 Ohio St. 81, 82, 26 O.O. 2d 377, 197 N.E. 2d 546, 547 (grade crossing protection is "provided largely to protect members of the public against the consequences of their own carelessness rather than to provide any tangible or intangible benefit to the railroad * * *"); Section 646.210(b)(1), Title 23, C.F.R. (ICC regulation declaring that "[p]rojects for grade crossing improvements are deemed to be of no ascertainable net benefit to the railroads * * *"). Conrail also argues that the commission improperly considered the availability of federal funds in arriving at the sixty percent-forty percent allocation. It cites *Canton* v. *Norfolk & Western Ry. Co.* (May 23, 1979), PUCO No. 77-897-RR-CSS, unreported, for the proposition that availability of public funds should have no bearing on the apportionment of costs under the statute.

The commission argues in response that it is vested with broad discretion under R.C. 4907.47, and could properly consider the availability of funds as a "special factor." The commission further argues that the relative rail and highway traffic volumes in this case are significantly different from the cases cited by Conrail, and that this factor alone supports the difference in cost allocations.

R.C. 4907.47 requires the commission, when apportioning costs, to take into account the relative benefits of the

---

[1] At oral argument, counsel for the commission noted that the text of R.C. 4907.47 has been amended by Am. Sub. H.B. No. 111, effective October 29, 1989.

The amendment does not change the factors which the commission must consider in apportioning costs.

installation. The fact that the statute requires this factual determination to be made in every case is incompatible with Conrail's assertion that the commission is bound by precedent to a rigid ninety percent-ten percent allocation formula. While the "ninety percent-ten percent" custom apparently has some historical precedent, the General Assembly intended that the commission make individualized findings in each case.

We hold that the commission is vested with discretion to apportion the cost of installation and maintenance of protective devices at rail-highway crossings. The commission properly exercises its discretion so long as the apportionment is reasonably based upon the factors contained in R.C. 4907.47. The commission is not bound by a "ninety percent-ten percent" rule. Nor is the commission required to justify deviations from a "ninety percent-ten percent" allocation.

The statute requires the commission to consider "such other special factors and conditions as in the opinion of the commission are relevant." Clearly, the General Assembly intended by this language to give the commission broad discretion to consider any facts which might affect the installation of protective devices. The commission has dismissed proceedings under R.C. 4907.47 when it has found that the governmental entity in question would be unable to pay its share of the costs. *Canton* v. *Norfolk & Western Ry. Co., supra,* at 10. Because this factor could potentially determine if protective devices are installed, the Public Utilities Commission may consider the availability of federal funds in apportioning the cost of installation and maintenance of protective devices at rail-highway crossings.[2]

The broad grant of discretion to consider individualized facts does not mean, however, that this court will automatically accept any allocation by the commission. The commission's apportionment must be supported by "sufficient probative evidence." *Columbus* v. *Pub. Util. Comm., supra,* at 104, 12 O.O. 3d at 113, 388 N.E. 2d at 1238.

The commission gave two primary reasons for its allocation: a belief that the relative benefit to the railroad of improved crossing protection has increased over the past twenty-five years, and a perception that "there is considerable difficulty in obtaining federal funds." These assertions are unsupported by the record.

There was no testimony before the examiner that Richland County would be ineligible for federal funds and no testimony regarding a twenty-five year "evolution" on "the issue as to the beneficiary of protective devices at railroad crossings." In its exceptions to the examiner's recommendation, the board discussed only the volume of traffic over the crossing, and did not assert that it could not obtain funding for ninety percent of the installment cost.

The record does indicate that the crossing in question is used less frequently by motorists and more frequently by trains than the crossings in the cases cited by Conrail in support of the ninety percent-ten percent allocation made by the attorney examiner. See *Canton* v. *Norfolk & Western Ry. Co., supra,* at 2-4 (one thousand thirty vehicles and ten trains per weekday); *Columbus* v. *New York Central RR. Co., supra,* at 5 (two thousand eighty-

---

[2] We do not express here any opinion regarding the weight to be given this factor by the commission. This is a matter left to the discretion of the commission by R.C. 4907.47, and reviewable by this court only for abuse of discretion.

eight vehicles and ten trains per day). However, this factor, standing alone, does not justify the allocation made by the commission when it appears that the allocation was based on other considerations.

Because of the lack of supporting facts in the record, "[i]t is * * * impossible for this court to determine whether the allocation made by the commission is either reasonable or lawful." *New York, Chicago & St. Louis RR. Co.* v. *Pub. Util. Comm.,* *supra,* at 83, 26 O.O. 2d at 378, 197 N.E. 2d at 547. Accordingly, we reverse and remand this cause to the commission for a rehearing in accordance with this opinion.

*Order reversed
and cause remanded.*

MOYER, C.J., SWEENEY and WRIGHT, JJ., concur.

HOLMES, DOUGLAS and RESNICK JJ., dissent.

DOUGLAS, J., dissenting. I respectfully dissent. R.C. 4907.47 requires the PUCO to consider specific factors with regard to each individual public railroad-highway grade crossing when the commission is determining whether the installation of protective devices should be ordered. R.C. 4907.47 also gives the commission broad discretion in determining how the costs of installing and maintaining crossing protective devices should be apportioned.

In the case before us, the commission studied the crossing in question and found, among other pertinent facts, that vehicular use of the crossing is relatively light while an average of twenty-one trains, traveling up to fifty miles per hour, pass the crossing each day. These facts, combined with the broad discretionary authority vested in the commission and a review of the record, lead me to the conclusion that the commission did not abuse its discretion in making the apportionment it did in this case.

In *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104, 12 O.O. 3d 112, 113, 388 N.E. 2d 1237, 1238, we stated:

"Under the 'unlawful or unreasonable' standard specified in R.C. 4903.13, this court will not reverse or modify an opinion and order of the Public Utilities Commission where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty."

We have consistently adhered to this view. See *In re Application of G & B Anderson, Inc.* (1988), 38 Ohio St. 3d 96, 526 N.E. 2d 792; *MCI Telecommunications Corp.* v. *Pub. Util. Comm.* (1987), 32 Ohio St. 3d 306, 513 N.E. 2d 337; *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, 4 OBR 341, 447 N.E. 2d 733; *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153, 21 O.O. 3d 96, 423 N.E. 2d 820; *Ohio Utilities Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 153, 12 O.O. 3d 167, 389 N.E. 2d 483; *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58, 1 O.O. 3d 35, 351 N.E. 2d 183.

There is no showing by the majority that the commission abused its discretion and/or that the commission's decision is against the weight of the evidence. What the majority does, simply, is substitute its judgment for that of the commission.

Since I believe that this is an improper exercise of our authority, I respectfully dissent.

HOLMES and RESNICK, JJ., concur in the foregoing dissenting opinion.