OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Consumers' Counsel v. Pub. Util.*
*Comm.* (1991), 61 Ohio St.3d 396.]

(Nos. 90–1539 and 90–2116—Submitted May 22, 1991—Decided August 14, 1991.)

*William A. Spratley,* Consumers' Counsel, *David C. Bergmann* and *Yvonne T. Ranft,* for appellant.

*Lee I. Fisher,* Attorney General, *Robert S. Tongren, James B. Gainer* and *Steven T. Nourse,* for appellee Public Utilities Commission in case No. 90–1539.

*Lee I. Fisher,* Attorney General, *James B. Gainer* and *Steven T. Nourse,* for appellee Public Utilities Commission in case No. 90–2116.

*Kathy J. Kolich* and *Leila L. Vespoli,* for intervening appellee Ohio Edison Company.

HOLMES, J.    Appellant OCC argues that the Commission erred by raising *sua sponte* the issue of whether the "condominium clause" was discriminatory. In this regard, OCC argues that when the Commission determined that the condominium clause was unjustly discriminatory, "it chose to forge off in a direction not even hinted at by the parties * * *," and did so without notice to the parties, and that such action by the Commission inherently violated the due process rights of the consumers.

The OCC also argues that the Commission erred as a matter of law in concluding that the condominium clause had a discriminatory impact upon other customers of Ohio Edison and that the evidence does not support such a finding.

We find that the Commission did not err in the application of the appropriate law, and was reasonable in making the determination that it made under all the circumstances of the matter presented to it.

Pursuant to R.C. 4905.26, the Commission may find a rate or tariff provision unlawful, unjust, unreasonable or discriminatory, whether that issue is raised by the complaint or *sua sponte* by the Commission.

R.C. 4905.26 provides in pertinent part:

"Upon complaint in writing against any public utility by any person * * *, or upon the initiative or complaint of the public utilities commission, that any rate * * * is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, * * * if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. * * * "

The jurisdiction over the totality of utility rates pursuant to R.C. Chapter 4905, and specifically the above quoted section, is sufficiently broad for the Commission to have *sua sponte* addressed the question of the discriminatory nature of the condominium clause. However, here the appellant OCC itself had placed the issue before the Commission. Ohio Edison points out that in paragraph ten of the complaint OCC alleged that "OE's [Ohio Edison's] practice of billing complainants at commercial rates for service to common areas of the condominium complex is unjust, unreasonable, discriminatory and in violation of law and OE's residential service tariff." Although the alleged discrimination pertained to the common areas and security lighting for these condominiums, the allegation reasonably encompassed any discrimination that was inherent in the condominium clause, whether against these or other customers of Ohio Edison similarly situated.

As noted by Ohio Edison, the OCC had advance notice that the Commission would be reviewing the question of any discrimination in the condominium clause, and OCC was allowed the opportunity to introduce evidence of comparisons between the usage at condominiums and single family houses. The Commission, having all the evidence before it, concluded that the condominium clause of Ohio Edison's tariff affected the rights, and the rates, of the company's non-condominium owner customers.

Based upon all the facts before it, the Commission determined that the condominium clause was discriminatory.

In that we have decided the substantive issue of the lawfulness and reasonableness of the Commission's order regarding the condominium clause, the procedural issue presented within case No. 90–2116 is moot. However, we will proceed to make a few pertinent points relative to these procedural issues. First, OCC sought to stay the implementation of the amendment of the rates resulting from the Commission's prior order to delete the condominium clause from Ohio Edison's tariff. However, it did not follow the statutory procedure of asking the Supreme Court to stay an order of the Commission, including posting a bond. See R.C. 4903.16. Instead, OCC moved the Commission itself to stay consideration of the amendment application. The Commission denied that motion, and OCC appealed to this court.

R.C. 4903.16 provides for the procedure that must be followed when seeking a stay of a final order of the Commission. Specifically, R.C. 4903.16 provides in pertinent part:

"A proceeding to reverse, vacate, or modify a final order rendered by the public utilities commission does not stay execution of such order unless the supreme court or a judge thereof in vacation, on application and three days' notice to the commission, allows such stay, in which event the appellant shall execute an undertaking, payable to the state in such a sum as the supreme court prescribes, with surety to the satisfaction of the clerk of the supreme court, conditioned for the prompt payment by the appellant of all damages caused by the delay in the enforcement of the order complained of * * *."

In *Columbus v. Pub. Util. Comm.* (1959), 170 Ohio St. 105, 10 O.O.2d 4, 163 N.E.2d 167, it was held by this court that the statutory procedures control the process for appealing final Commission orders. In its interpretation of this statute, in *Columbus,* this court concluded that "any stay of an order of the commission is dependent on the execution of an undertaking by the appellant * * *." (Emphasis deleted.) *Id.* at 109, 10 O.O.2d at 7, 163 N.E.2d at 170.

The order in the condominium clause case, Supreme Court case No. 90–1539, established the rates that Ohio Edison was authorized to charge. That was a *final* Commission order. If appellant wished to stay the collection of the rates authorized by that order pending its appeal thereof, it should have moved to stay the order. Additionally, in that R.C. 4903.16 is the statute dealing with staying a final Commission order, appellant should have complied with all of its requirements. Appellant did not apply to this court for a stay of the final order eliminating the condominium clause, nor did it post a bond. Therefore, based upon R.C. 4903.16, and this court's interpretation thereof,

appellant would not be entitled to the relief it seeks in Supreme Court case No. 90–2116.

Based upon all the foregoing, we hereby affirm the Commission's opinion and order in case No. 90–1539 and dismiss *sua sponte* as moot the appeal in case No. 90–2116.

*Judgment accordingly.*

MOYER, C.J., SWEENEY, DOUGLAS and WRIGHT, JJ., concur.

H. BROWN and RESNICK, JJ., dissent.

HERBERT R. BROWN, J., dissenting. In the instant case, the Public Utilities Commission, without proper notice or hearing, ordered Ohio Edison to eliminate a provision in its tariff which benefited certain consumers, then proceeded to retroactively apply its holding to the further detriment of the complainants. Because today's majority approves of and affirms the commission's actions, I must respectfully dissent.

It is important to keep in mind exactly what happened in the instant case. Pursuant to the so-called "condominium clause" of Ohio Edison's residential electric service tariff, approved by the commission in 1988, electric service to " * * * commonly used facilities within condominiums" was available at the "residential" rate, rather than the higher "general service" rate charged for electric service to the common areas of apartment buildings. Through a series of internal documents called "rate letters" (which were *not* part of the tariff) Ohio Edison purported to "interpret" the tariff so as to define certain condominium facilities as falling within the condominium clause, and others as falling outside of it. As Ohio Edison's own official admitted, applying the "rate letter" definitions to particular condominium complexes involved something of a "judgment call."

The Copley Village complexes were determined by Ohio Edison not to qualify for the residential rate for the reason that all the common-area lighting at Copley Village was outdoors (and not qualifying as "incidental"), and the rate letter defined "within condominiums" as meaning *"within* buildings" of condominiums. (Emphasis *sic.*) Accordingly, Ohio Edison billed these complexes at the general service rate for electricity used in their common areas. The Copley Village owners' associations, through the Office of Consumers' Counsel,[1] filed a complaint with the commission contending that they qualified for the residential rate. The commission ruled against the

---

1. Under R.C. 4911.15, the Office of Consumers' Counsel is empowered to appear as a representative of any residential consumer of any public utility.

Copley Village owners, not because it agreed with Ohio Edison's interpretation of the tariff, but because it held the condominium clause of the tariff to be unjust discrimination against apartment dwellers.

## I

In the instant case, the commission chose to adjudicate matters not raised in the complaint. Clearly, under R.C. 4905.26, the commission may do so. However, R.C. 4905.26 also requires the commission to give at least fifteen days' notice to the utility and the public that the issue will be considered. No notice of the commission's intent to consider the issue was given to either the public at large or the parties to the instant case.

Not only did this action violate R.C. 4905.26, it left the residents and owners of other condominium complexes served by Ohio Edison with no opportunity to present evidence and make arguments to the commission in a case which directly affected the rates they pay for electricity. Worse, the commission also deprived itself of information relevant to the issue it chose to decide. Though it purported to be comparing apartments as a class to condominiums as a class, the commission heard no testimony and collected no data on apartments and received evidence on only one other condominium complex.[2] One would think that the commission would want as much data as possible before deciding the issue. Indeed, it almost seems as though the commission had embarked on a deliberate strategy to *avoid* a fully informed decision.

## II

The commission's failure to build a record also makes it impossible for this court (or anyone else) to evaluate the correctness of the commission's decision.

The commission has expertise in the field of public utilities, and we should, of course, accord its decisions due deference. R.C. 4903.13; *Consumers' Counsel v. Pub. Util. Comm.* (1985), 18 Ohio St.3d 264, 265, 18 OBR 318, 319, 480 N.E.2d 1105, 1106. However, "due deference" does not mean that we automatically and uncritically accept whatever the commission pronounces. *Consolidated Rail Corp. v. Pub. Util. Comm.* (1989), 47 Ohio St.3d 81, 84, 547 N.E.2d 1176, 1180; see, also, *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1937), 301 U.S. 292, 303–305, 57 S.Ct. 724, 730–731, 81 L.Ed.2d 1093, 1101–1102

---

2. At oral argument, counsel for the commission reluctantly conceded that there is no evidence in the record concerning any apartments within the company's service area. He assured the court, however, that this was immaterial because such evidence would be cumulative. This author questions the commission's (and its counsel's) ability to evaluate the probative value of evidence it (or he) has never seen.

(criticizing this court for accepting factual findings not based on record evidence). The commission cannot decide cases on subjective belief, wishful thinking, or folk wisdom. Its decision must be based on a record containing "sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty." *Columbus v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 103, 104, 12 O.O.3d 112, 113, 388 N.E.2d 1237, 1238; see, also, *Consolidated Rail, supra,* 47 Ohio St.3d at 84–85, 547 N.E.2d at 1180. This is particularly important where, as here, an arcane and difficult question is involved.[3]

In other cases, this court has not hesitated to reverse agency decisions based on inadequate records and unstated reasoning. *E.g., In re Williams* (1991), 60 Ohio St.3d 85, 573 N.E.2d 638 (State Medical Board's decision not supported by record evidence); *State, ex rel. Noll, v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245 (Industrial Commission failed to state the basis of its decision); *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 555 N.E.2d 940 (State Personnel Board of Review's decision inconsistent with the record evidence); *Consolidated Rail, supra* (Public Utilities Commission's decision not supported by record evidence); *Howard v. Cuyahoga Cty. Bd. of Revision* (1988), 37 Ohio St.3d 195, 524 N.E.2d 887 (Board of Tax Appeals failed to state facts relied upon in making its decision); *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265 (Civil Service Commission's decision not supported by sufficient evidence). Thus, it seems inappropriate that today's majority would defer to a decision based on an empty record. We should, instead, remand the case to the commission so that the issue may be considered in accordance with law.

### III

Finally, the commission, by making its decision to invalidate the condominium clause retroactive so as to defeat the complainants' refund claim, acted contrary to law.

One of the primary purposes of the regulation of public utilities is to prevent price discrimination. Were it not for the regulation of tariffs by the commission, utilities could unfairly use their monopoly power to force higher

---

3. Given the lack of a proper record in this case, I cannot definitively conclude that the commission is right or wrong on this issue. While the commission's rationale seems to comport with common sense and common experience, it should be noted that the commission's counterpart in at least one other state has reached a contrary conclusion. *In re Electric Rates for Common Facilities in Co-operatives and Condominiums* (Fla.Pub.Serv.Comm.1966), 65 P.U.R.3d 233.

rates on some customers in order to subsidize lower rates given to other, more favored customers. See, generally, Phillips, The Regulation of Public Utilities: Theory and Practice (2 Ed.1988) 62–63, 171–172. Accordingly, a utility may only charge the rates fixed by its current, commission-approved tariffs, R.C. 4905.32; *Suburban Power Co. v. Pub. Util. Comm.* (1931), 123 Ohio St. 275, 281–282, 175 N.E. 202, 204, and no tariff is effective until the commission finds in a rate case that it is "just and reasonable," R.C. 4909.17; see, also, *Gen. Tel. Co. v. Pub. Util. Comm.* (1962), 173 Ohio St. 280, 19 O.O.2d 153, 181 N.E.2d 698; *Defiance v. Toledo Edison Co.* (1933), 47 Ohio App. 100, 40 Ohio Law Rptr. 181, 190 N.E. 781; Phillips, *supra,* at 63.

It is a necessary corollary of this principle that ambiguities in a tariff are to be construed to favor the customer. *Saalfield Publishing Co. v. Pub. Util. Comm.* (1949), 149 Ohio St. 113, 36 O.O. 468, 77 N.E.2d 914, paragraph two of the syllabus; *Horning v. Columbus & Southern Elec. Co.* (Jan. 31, 1984), PUCO No. 82–1209–EL–CSS, unreported, at 4–5. Clearly, the condominium clause suffered from ambiguity, as evidenced by the fact that its author, Ohio Edison, felt compelled to issue a "rate letter" to interpret it.[4] If it is doubtful whether the Copley Village complexes were entitled to the residential rate, then *Saalfield Publishing* compels the commission to find that they were. The commission's ultimate disposition of the case, however, has the effect of construing the ambiguity *against* the customer.

The commission also ignored the well-established "filed rate doctrine." So long as it follows the prescribed procedure and bases its decision on sufficient record evidence, the commission clearly has the power under R.C. 4909.15(D) to fix a new rate schedule when it invalidates an existing one pursuant to R.C. 4905.26. *Ohio Util. Co. v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 153, 12 O.O.3d 167, 389 N.E.2d 483, paragraph one of the syllabus. However, this action is *prospective* only; until the existing tariff is changed by an order of the commission, the utility may charge only the rates contained therein. *Id.* at 157–158, 12 O.O.3d at 169–170, 389 N.E.2d at 486–487; see, also, *Pub. Util. Comm. v. United Fuel Gas Co.* (1943), 317 U.S. 456, 464, 63 S.Ct. 369, 374, 87 L.Ed. 396, 401; *Gen. Tel. Co., supra,* at 282–283, 19 O.O.2d at 154, 181 N.E.2d at 699; *Suburban Power, supra,* at 281–282, 175 N.E. at 204. Even if the commission had correctly invalidated the condominium clause, the Copley Village complexes (and other condominium complexes served by Ohio Edison) are still entitled to the benefit of the condominium clause up to the effective date of the commission's decision.

---

4. Further, it should be noted that if a utility is allowed unbridled discretion to resolve the ambiguities in its tariffs by issuing unapproved "rate letters," there is a very real danger of the sort of price discrimination which public utility regulation is intended to prevent.

## IV

In the instant case, the commission, in its haste to reach a result detrimental to electric power consumers, defied both the governing statutes and a wealth of case law emanating from this court. Because the majority endorses this course of action, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.