EDWARDS TRANSFER & STORAGE COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Edwards Transfer & Storage Co. *v.* Pub. Util. Comm. (1984), 11 Ohio St. 3d 226.]

(No. 83-1698—Decided June 27, 1984.)

Messrs. *Baker & Hostetler* and *Mr. A. Charles Tell,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Robert S. Tongren* and *Mr. Steven H. Feldman,* for appellee.

*Per Curiam.* R.C. 4903.13 provides in pertinent part, that "[a] final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unreasonable or unlawful."

This court finds the July 27, 1983 order of appellee to be unreasonable, and we thus reverse in favor of appellant.

This court was faced with virtually identical certificate language in *Stony's Trucking Co.* v. *Pub. Util. Comm.* (1972), 32 Ohio St. 2d 139 [61 O.O.2d 388]. In interpreting such language, the court stated at 142:

"* * * the phrase 'extra-heavy or special property requiring special loading equipment' cannot possibly be defined from examination of the certificate alone. Definition can only be achieved through examination of the factors leading to the granting of the certificate by the Public Utilities Commission."

Thus, when interpreting ambiguous certificate language, the history of the certificate is a major consideration. Accord *Besl Corp.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 146 [74 O.O.2d 262].

In the case at bar, an examination of the circumstances surrounding the 1935 grant of the irregular certificate to appellant reveals the unreasonableness of the cease-and-desist order. The only evidence presented to the commission at the 1935 hearing on appellant's certificate application was the testimony of the then president and general manager of appellant, D. E. Edwards. The following testimony is particularly instructive as to appellant's intent in its subsequent use of the certificate, if granted:

"Examiner George: This heavy material you propose to load is material that can't be loaded by any other way than by derrick?

"* * * [Mr. Edwards]: By a derrick; they wouldn't pay for us coming down there to do it if they could get somebody else in that territory to do it, see.

"Examiner George: Your hauling will be entirely limited to that which can't be placed on an ordinary truck?

"* * * [Mr. Edwards]: Yes, on an ordinary truck; you know they wouldn't pay us to do it if an ordinary man could do it, they would let him do it, — be a fifth of the price we could do it."

This testimony remained unchallenged, and the certificate was granted shortly thereafter. Thus, it is apparent that the intent of the commission in 1935 was to authorize appellant to transport property of such a nature as to require either (1) special loading or unloading equipment, or (2) special transportation equipment.

At various other times during his testimony Edwards was asked to give examples of what his company would be hauling if the certificate were to be granted. His answers (which named certain items) are now relied upon by appellee as a basis for the instant order, in that appellant has since expanded its hauling business to include items not specifically mentioned at the 1935 hearing. Such a basis is unfounded. Edwards' answers were merely examples of items contemplated at that time as being within the scope of a broader authority. Appellant was given authority to offer a particular *service,* not to confine itself to the hauling of a static list of items.

Appellee argues that *Stony's Trucking Co., supra* and *Besl Corp., supra,* are dispositive of this matter. In both cases the commission ruled against the certificate holder on similar facts, and was upheld by this court. These cases are readily distinguishable, however.

*Stony's Trucking Co., supra,* stands only for the proposition that when the language of a certificate of public convenience and necessity is ambiguous, the commission may consider the circumstances surrounding the original grant. *Id.* at the syllabus. Although the language of the *Stony's* certificate is almost identical to the instant certificate, the *Stony's* opinion does not discuss any of the details of that certificate's history.[1] Hence, that case is not dispositive of what is important in the history of a certificate grant.

In *Besl Corp., supra,* the certificate language was slightly different, but in that case the court expressly found an original contemplation of a specified list of items to be hauled.[2] In the case at bar we find no such contemplation.

---

[1] The only reference to the original granting of the certificate in *Stony's* is found in the opinion at 142: "From an examination of the record we conclude that the Public Utilities Commission was warranted in its determination that the 1939 certificate did not authorize the tariff filed by appellant on January 14, 1971."

[2] The Court in *Besl Corp., supra,* stated at 149:

"The record herein establishes that when appellant's certificate was originally issued in 1940, it contemplated the transportation of excavating machines, shovels, cranes, draglines,

The evidence presented to the commission at the February 17, 1983 hearing indicates that the property presently being hauled by appellant under authority of the disputed certificate is of such a nature as to require either (1) special loading or unloading equipment, or (2) special transportation equipment. We therefore find that the July 27, 1983 cease-and-desist order of the commission is unreasonable, and such order is hereby reversed.

*Order reversed.*

SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., and W. BROWN, J., dissent.

WILLIAM B. BROWN, J., dissenting. Because I believe the majority incorrectly reverses the order of the Public Utilities Commission ("commission"), I respectfully dissent.

The essence of the majority's holding is that since the certificate in question authorizes the transportation of property "requiring special loading equipment," the commission intended in 1935 to allow Edwards Transfer & Storage Co. ("Edwards") to engage in the transportation of items based upon a specialized type of service and did not limit the commodities which may be transported.

It should be noted that the certificate does not merely refer to property requiring special loading equipment necessary to effectuate transportation. Instead, it is limited to "extra heavy or special property" requiring special loading equipment. The history surrounding the certificate's issuance indicates that the property sought to be transported would require hoists, derricks or cranes in order to be loaded and unloaded. As the majority points out, Mr. Edwards testified in 1935 that the material he proposed to haul could only be loaded by a derrick. That is a far cry from the position now being taken, that any goods which cannot be manually loaded come within the coverage of the certificate.

Additionally, the 1935 testimony demonstrated that the certificate was being sought to allow Edwards to transport shovels, concrete mixers, bin batchers, spreaders, heavy construction equipment and heavy construction materials. I agree that this may not represent an exhaustive list of what Edwards sought to transport. But it is totally different in kind and degree from the nuts, bolts, bumpers, pins, rails, horseshoes and staples which Edwards now seeks to transport. To accept Edwards' argument would be to agree that anything that could be packaged large enough, without regard to the item's individual size or weight, would qualify for heavy haul status. Such a

---

road paving equipment, and caterpillar tractors. * * * Therefore, it is our conclusion that the commission's determination that appellant's certificate did not authorize the hauling of iron and steel articles * * * is not unreasonable or unlawful, and is supported by the record."

classification would, no doubt, include an overwhelming percentage of all goods shipped by truck. Not only does such a conclusion appear absurd on its face, but it would also radically alter the commission's existing tariff system.

At best, the record and the majority's interpretation of the situation demonstrate the existence of an ambiguity and the need to resolve what has developed into a disputed factual situation, *i.e.,* whether the certificate authorizes Edwards to provide a service because of the need for special loading procedures or whether the certificate places a limitation on the types of property Edwards may transport. With regard to the unreasonable and unlawful standard specified by R.C. 4903.13 this court has previously stated that:

"* * * [it] will not reverse or modify an opinion and order of the Public Utilities Commission where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty." *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104 [12 O.O.3d 112].

Therefore, resolution of the present issue, the scope of the certificate, is not so much a legal question as it is a factual matter: the intent at the time of issuance. The record contains evidence to support the commission's conclusion. Nothing in the record indicates that Edwards' equipment is any different from the equipment used by general freight haulers who haul similar commodities. The 1935 testimony demonstrated that Edwards' service was intended for situations where "ordinary" trucks used by other carriers could not be used. Edwards' rates for its supposedly specialized service are very similar to the regular rates for general freight haulers. The property discussed in the 1935 hearing was confined to heavy construction machinery and equipment and ancillary heavy construction materials, such as forty-foot long pipe, and did not include property of the class now proposed to be transported. Thus, the commission's interpretation of the certificate, rejecting the argument that Edwards may transport goods solely because such goods cannot be manually loaded is, in view of the record, both reasonable and lawful.

Finally, the majority's summary rejection of the precedent established in *Stony's Trucking Co.* v. *Pub. Util. Comm.* (1972), 32 Ohio St. 2d 139 [61 O.O.2d 388], and reaffirmed in *Besl Corp.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 146 [74 O.O.2d 262], is questionable. Both cases concerned certificates whose language was virtually identical to that now in issue. Although different histories were considered leading to the granting of those certificates, it is nevertheless true that this court concluded on both occasions that the language did not authorize the transportation of iron and steel products similar to those sought to be transported by Edwards under a heavy hauling certificate.

For the foregoing reasons, I find the commission's opinion and order to be both reasonable and lawful and would affirm.

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.