CLEVELAND ELECTRIC ILLUMINATING COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Cleveland Elec. Illum. Co. *v.* Pub. Util. Comm. (1986), 24 Ohio St. 3d 135.]

(No. 85-1017—Decided June 25, 1986.)

*Squire, Sanders & Dempsey, Alan P. Buchmann, Arthur E. Korkosz* and *Charles R. McElwee II,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Duane W. Luckey,* for appellee.

*William A. Spratley,* consumers' counsel, *Beth Ann Burns* and *Richard P. Rosenberry,* for intervening appellee Office of Consumers' Counsel.

*Hahn, Loeser, Freedheim, Dean & Wellman, Craig A. Glazer, John D. Maddox,* director of law, and *William M. Ondrey Gruber,* for intervening appellee city of Cleveland.

*Per Curiam.*

## I

The first issue before us is whether the company is entitled to recover the payment of an increased excise tax levy made after November 15, 1981 pursuant to legislative enactment Am. Sub. H. B. No. 694, effective May 1, 1981. This legislation increased the excise tax rate on gross receipts for public utilities in three ways. First, the permanent tax rate was increased from 4 percent to 4.25 percent. Second, a temporary one-year tax increase of .25 percent was imposed. Third, a surtax of .21 percent was levied. The three increases, totaling .71 percent, were effective

with gross receipts collected on or after May 1, 1981. Also included in Am. Sub. H. B. No. 694 was R.C. 4909.161, which provides as follows:

"Notwithstanding the provisions of Chapters 4905. and 4909. of the Revised Code, the payment of any type of increased excise tax levy shall be considered to be a normal expense incurred by a public utility in the course of rendering service to the public and may be recovered as such in accordance with an order of the public utilities commission. Any public utility required to pay any such increased excise tax levy may file with the public utilities commission revised rate schedules which will permit full recovery on an interim or permanent basis in its rates, of the amount of any resultant increased tax payments and the commission shall promptly act to approve such schedules."

By entry dated November 25, 1981 in case No. 81-1408-AU-UNC, the commission established procedures for utilities seeking relief under R.C. 4909.161 that would allow the recovery of the payment of increased excise taxes. The company filed its application on December 15, 1981, in case No. 81-1408-AU-UNC, to revise its rates in order to fully recover the excise tax increase. By entry dated December 23, 1981, the commission approved that application and authorized a .71 percent surcharge. The company began billing the surcharge with bills rendered on and after January 1, 1982. The surcharge was to remain in effect until the company fully recovered the additional taxes.

Thereafter, the General Assembly enacted legislation further extending and increasing excise tax liability for public utilities. In 1982, Am. Sub. H. B. No. 530 extended the .25 percent temporary tax increase one additional year, and the .21 percent surtax was increased to .25 percent. In case No. 82-1268-AU-UNC, the commission authorized the company to increase the surcharge to .75 percent with bills rendered on or after January 7, 1983. In 1983, Am. Sub. H. B. No. 291 terminated the temporary tax and surtax and permanently set the gross receipts tax rates at 4.75 percent. On January 10, 1984, the commission in case No. 82-1268-AU-UNC authorized the company to continue collecting the surcharge until such time as the permanent 4.75 percent was included in the base rates.

In this case the 4.75 percent rate was incorporated into the company's base rates, but the company alleged that this formula prevented it from recovering the additional .71 percent excise tax expense incurred in the period from May 1 to December 31, 1981. The commission denied the company relief stating that recovery permitted pursuant to R.C. 4909.161 was keyed to actual payment of the excise tax. The commission stated, "* * * CEI would be entitled to recover the December, 1981 installment, but has not provided any testimony or evidence indicating the level of such an installment. Therefore, this objection must be overruled. * * *"

In its entry on rehearing, the commission stated, "* * * CEI argues that the Commission erred in not permitting it to recover the $4.9 million amount for the excise taxes incurred from May to December, 1981. The

Commission is not denying recovering [*sic*] for this portion of CEI's excise tax liability; it is simply deferring recovery and recognizing this fact in the cash component of working capital. * * *''

On appeal the company states that it paid $4,982,202 in 1982 in excise tax levies that was not recovered in the surcharge permitted by the commission. As noted above, the commission acknowledges the payment of the excise tax in its entry on rehearing. As we previously stated in *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, paragraph one of the syllabus, "[p]ayment of any type of increased tax levy after November 15, 1981 shall be considered to be a normal expense incurred by a public utility in the course of rendering service to the public." Consequently, it is clear that the company is entitled to recovery of payment of the increased excise tax levy made after November 15, 1981 pursuant to Am. Sub. H. B. No. 694.

Thus we reverse and direct the commission to allow the company to recover the difference between the excise tax payments and the monies already received thereon by way of a surcharge billed to its customers.

## II

The next issue before us is whether the commission utilized a legal and appropriate method in calculating the company's property tax deduction for ratemaking purposes.

It is axiomatic that the company is permitted to deduct its property taxes in the calculation of its federal income taxes. In every year since 1958 or 1959, the federal income tax deduction for property tax has been based upon the following year's estimated property tax expense. In the present appeal, the company challenges the methodology used by the commission in the determination of the property tax deduction for ratemaking purposes. The company asserts that the *actual* calendar year-end property tax expense should be used for ratemaking purposes. In its application, the company requested that its property tax expense be calculated by multiplying the year-end property tax rate by the valuation of its property at the end of the test year. The commission's staff initially agreed with and adopted the company's methodology in its report to the commission because such methodology conformed with reality. However, Consumers' Counsel objected and argued that the company's methodology failed to recognize that the federal income tax deduction has in past years been based on the following year's estimated property taxes. Consumers' Counsel contended that the commission should use a reconciling adjustment that would flow through to the company's ratepayers this "accelerated" tax deduction. Thereafter the staff revised its position and adopted Consumers' Counsel's posture. The company in rebuttal contended that the tax rate utilized by Consumers' Counsel should be modified to reflect the effect of this court's decision in *Condee* v. *Lindley* (1984), 12 Ohio St. 3d 90, which caused a change in the effective tax rates. The company reaffirmed its argument that the commission should multiply the

year-end property tax rate by the property valuation at the end of the test year to determine the appropriate property tax deduction.

Nevertheless, the commission adopted its staff's recommendation but adjusted it as requested by the company to account for the tax rate changes resulting from *Condee*. The commission rejected the company's argument that it should utilize the year-end property tax expense and instead adopted a methodology that reconciled the timing difference between the year-end actual property tax expense and the estimated property tax expense for federal income tax purposes.

On appeal the company argues that, under the circumstances of the present case where the calendar year and test year coincide, the reconciliation formula used by the commission produces a larger property tax deduction than the company actually has for the test year. We agree and hold that the commission should use the actual calendar year-end property tax expense as the federal income tax deduction for ratemaking purposes.

We have previously held that generally accepted accounting principles should be followed in determining the available income tax deductions for ratemaking purposes. *Ohio Edison Co.* v. *Pub. Util. Comm.* (1962), 173 Ohio St. 478 [20 O.O.2d 108]. The methodology used by the commission rests upon the premise that the company's actual property tax expense for any given year is not what the company is allowed to deduct from its federal income taxes for that year but some greater *fictitious* amount. This premise is unsound.

Accordingly, it is obvious that the order of the Public Utilities Commission is both unreasonable and unlawful and must be reversed. We remand for further proceedings in accordance with this opinion.

*Order reversed and cause remanded.*

SWEENEY, HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs in judgment only.

CELEBREZZE, C.J., LOCHER and C. BROWN, JJ., dissent.

CELEBREZZE, C.J., dissenting. Initially, I must take issue with the majority's assertion that the commission designated the test year and set the date certain for valuation of the company's property. In fact, the commission's opinion and order of March 7, 1985 states that "* * * the company advised the Commission by letter of its decision to amend the prefiling notification to reflect a proposed date certain of March 31, 1984 and a test year ending December 31, 1984. * * *" The commission then journalized its entry fixing the above dates. Thus, the test year and date certain for property valuation were chosen by the company and merely approved by the commission.

Relative to the merits, two questions are presented in this appeal. The first is whether the company demonstrated its entitlement to recovery of excise taxes allegedly paid after November 15, 1981. As the majority correctly explains, this court held in *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, that R.C. 4909.161 authorized recovery, in a rate case, of excise taxes paid after November 15, 1981. The legislative history contained in the majority opinion is illuminating, and I certainly agree that the company would be entitled to recover such taxes *if* the company had produced evidence to support its claim that it paid the excise taxes in 1982. The critical question before this court, however, is whether appellant met its burden of proof on this issue. R.C. 4909.19 provides that "[a]t any hearing involving rates or charges sought to be increased, the burden of proof to show that the increased rates or charges are just and reasonable shall be on the public utility." The evidence cited by appellant in support of its contention that it paid all these excise taxes in 1982 is scanty and even contradictory.[1] In view of the fact that concrete and specific evidence showing exactly *when* the taxes in question were paid was not produced by appellant, the commission was not required to take on faith (as the majority apparently has) the company's unproven assertion that it actually paid the 1981 excise tax in 1982. Given the company's failure to meet its statutory burden of showing when the taxes were actually paid, the commission's determination that the company had not sufficiently demonstrated entitlement to recovery of the 1981 excise tax pursuant to our holding in *Dayton Power & Light Co., supra,* is neither contrary to law nor an abuse of discretion. Its order should have been affirmed by this court.

The second question in this appeal involves the propriety of the commission's formula used in calculating the company's property tax deduction. It is well-settled that this court will not reverse the commission's order where there is sufficient probative evidence in the record to show that the commission's determination is not against the manifest weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty. *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403 [71 O.O.2d 393]; *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58 [1

---

[1] For example, the company claims its worksheets demonstrate when the amount in question was paid. However, the records relied on by appellant do not definitively establish *when* the surcharge for May-December 1981 was paid. Moreover, the company's own witness at the hearing before the commission, David M. Blank, stated that he believed the first excise tax payment was actually paid in October 1981, contrary to the company's assertion that *all* payments were made in 1982. Thus, there were apparently portions of the excise tax not paid in 1982, but the record is silent as to that amount. Even though *Dayton Power & Light Co.* v. *Pub. Util. Comm., supra,* holds that payment of excise tax made after November 15, 1981 can be recovered, it would be improper for the commission to speculate as to the time and amount of payment.

O.O.3d 35]; *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103 [12 O.O.3d 112].

The particular formula in the instant case is necessarily flexible in order to accommodate the test-year concept, for a test year (chosen by the utility) does not always coincide with a calendar year. Indeed, in my opinion, the commission's formula is superior to that proposed by appellant precisely because it is adaptable to *all* choices of test period. Instead of substituting its judgment (or rather, the utility's) for that of the commission, this court should defer to the commission's expertise and affirm its order pursuant to our holdings in *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm., supra, General Motors Corp.* v. *Pub. Util. Comm., supra,* and *Columbus* v. *Pub. Util. Comm., supra.*

For the foregoing reasons, I respectfully dissent.

C. BROWN, J., concurs in the foregoing dissenting opinion.

LOCHER, J., dissenting. I agree with the dissent of Chief Justice Celebrezze with regard to his views on the designation of the test year and the property tax issue. However, with respect to the excise tax issue discussed in Part I of the majority opinion, I am compelled to reiterate the view I expressed in my dissent in *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, 107, that nothing in R.C. 4909.161 suggests that it was intended to supersede the test-year concept.

Accordingly, I dissent.