CITY OF COLUMBUS, APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.

[Cite as *Columbus v. Pub. Util. Comm.* (1992), 62 Ohio St.3d 430.]

(No. 90–1575—Submitted June 5, 1991—Decided February 5, 1992.)

*Ronald J. O'Brien,* City Attorney, and *John C. Klein,* for appellant.

*Lee I. Fisher,* Attorney General, *James B. Gainer* and *Duane W. Luckey,* for appellee.

*Kerry Bruce,* for intervening appellee, city of Toledo.

*William A. Spratley,* Consumers' Counsel, *Joseph P. Serio* and *Evelyn R. Robinson–McGriff,* for intervening appellee, Office of Consumers' Counsel.

---

*Per Curiam.* Columbus claims that the commission acted unlawfully by failing to follow R.C. 4909.34, 4909.38, 4909.39 and 4909.15. We agree and reverse in part and remand.

In PUCO No. 84–67–GA–AIR, the commission fixed Columbia's rates on a regional basis finding regional rates to be preferable to Columbia's historic rate-making policy, which involved negotiating ordinance contracts with the numerous individual municipalities within Columbia's entire service territory.

However, in PUCO Nos. 88–716–GA–AIR *et seq.* ("1988 Columbia rate cases"), the commission rejected this regional rate-making as being unlawfully discriminatory. The commission found that Columbia failed to show a reasonable nexus between either cost of service or competition and the regional classifications. The commission then ordered that a single uniform general service rate be set on the basis of the five regions combined.

In the proceedings below, the commission, citing those reasons stated in its opinion and order and rehearing entry in the 1988 Columbia rate cases, again found that a single uniform rate for jurisdictional general service customers should be fixed for the five regions combined.

After finding the uniform rate to be appropriate for purposes of the rate applications, the commission next considered Columbia's complaint and appeal from the city of Columbus ordinance. The commission first tested the ordinance rate against the cost of rendering service to customers within the Columbus corporate limits to determine whether the ordinance rate would provide Columbia with a reasonable yield. The commission found that the ordinance rate would generate a rate of return on the city's rate base of 9.46 percent. Because the 9.46 percent rate of return was below the 10.55 percent uniform rate of return the commission found to be appropriate for Columbia, the commission concluded that the ordinance rate was inadequate.

Upon finding the ordinance rate to be inadequate, the commission proceeded to fix a substitute rate. It adopted the uniform rate, which had been approved for purposes of the applications, as the rate to be substituted for the inadequate ordinance rate. The return on the city's rate base derived by applying the uniform rate is 13.55 percent.

The city contends that the substituted rate is unlawful. In its first proposition of law, it argues that where, as here, a complaint and appeal are brought from an ordinance passed before the filing of a rate application, the commission must proceed under the complaint and appeal, rather than under the application. In its second proposition of law, it argues that when fixing the substituted rate, the commission must use the same cost-of-service methodology that was relied upon to test the sufficiency of the ordinance rate.

The commission argues that the city has failed to meet its burden of showing that the substituted rate is unlawful. Specifically, it argues that the commission has considerable discretion in setting rates, that the commission is not required to recognize the corporate boundaries of a municipality as a jurisdiction separate from the service area covered by a rate application filed pursuant to R.C. 4909.18, that there was no evidence of record upon which a separate rate for the city could have been fixed, and that there is no

requirement that rates fixed by the commission produce identical rates of return in all portions of a public utility's service territory.

Contrary to the commission's assertions, the city has met its burden of persuasion.

In *Norwalk v. Pub. Util. Comm.* (1938), 133 Ohio St. 335, 10 O.O. 498, 13 N.E.2d 721, the Ohio Fuel Gas Company filed an application with the commission for a modification and increase of its rates. Thereafter, the city of Norwalk adopted an ordinance fixing the rates to be charged by Ohio Fuel Gas. The city's motion to dismiss the application was denied. The commission held that the city was not authorized to pass the ordinance.

We reversed and remanded the matter to the commission for further proceedings holding that nothing in the relevant statutes made the application an exclusive method of rate determination or prevented the city from exercising powers specifically granted to it. *Id.* at 338, 10 O.O. at 499, 13 N.E.2d at 722. Moreover, we held in the syllabus:

"Under the provisions of Sections 614–44, 3644, 3982 and 3983, General Code [now R.C. 4909.34, 4909.35, 4909.36, 715.34, 743.26 and 743.28], a municipality has the power to enact an ordinance to fix rates for gas even after a public utility has filed an application to increase its rates under the provisions of Section 614–20, General Code [now R.C. 4909.17, 4909.18 and 4909.19]."

In *Northwestern Ohio Natural Gas Co. v. Pub. Util. Comm.* (1939), 135 Ohio St. 85, 13 O.O. 438, 19 N.E.2d 648, Northwestern Ohio Natural Gas Company filed an application with the commission for an increase and modification of natural gas rates in the city of Toledo. While the application was pending, the city enacted an ordinance fixing rates. Northwestern Ohio Natural Gas filed an appeal with the commission from the ordinance. On motion of the city, the commission dismissed the application.

On appeal to this court, Northwestern Ohio Natural Gas argued that the commission could elect whether to proceed under the application or under the appeal. We disagreed stating:

"The difficulty with the appellant's theory is that in the opinion in the *Norwalk case, supra,* the court indicated its rationale in the following language:

" 'These powers of the municipality are subject only to review by appeal to the Public Utilities Commission in [the] event the company does not accept the ordinance, and by the right of referendum existing in the people.'

"This statement was based upon the statutes and upon Sections 3, 4 and 5 of Article XVIII of the Constitution of Ohio which confer upon municipalities

a constitutional grant of broad powers with reference to public utilities. Then too, the court had in mind the fact that the statutes themselves disclose no legislative intent to deny rate-fixing powers to municipalities. Section 614-44, General Code, provides that a municipality may fix rates 'at any time' within one year before the expiration of any contract, and also 'at any other time authorized by law.' Likewise, Section 3982, General Code, specifically authorizes a municipality to regulate 'from time to time' the price which such companies may charge. Therefore, the ordinance took precedence, and the commission had no alternative but to proceed under the appeal rather than under the application." *Id.* at 86–87, 13 O.O. at 439, 19 N.E.2d at 649.

When *Norwalk* and *Northwestern* were decided, ordinances took precedence over applications. This was true whether the complaint and appeal were brought from an ordinance passed after the filing of an application, as in *Norwalk* and *Northwestern, supra,* or from an ordinance passed prior to the filing of an application. In either case, the General Assembly had disclosed no intent to deny municipalities rate-fixing powers. In 1976 and 1979, the General Assembly amended R.C. 4909.34, disclosing an intent to deny municipalities rate-fixing powers, but *only* in those instances where an ordinance was passed *after* the filing of an application. This statute now provides:

"Any municipal corporation or group of municipal corporations in which any public utility is established may, by ordinance or ordinances, at any time within one year before the expiration of any contract entered into under sections 715.34, 743.26, and 743.28 of the Revised Code between the municipal corporation or group of municipal corporations and such public utility with respect to the rate, price, charge, toll, or rental to be made, charged, demanded, collected, or exacted, for any commodity, utility, or service by such public utility, or at any other time authorized by law, proceed to fix the price, rate, charge, toll, or rental that such public utility may charge, demand, exact, or collect for such commodity, utility, or service for an ensuing period as provided in such sections, provided that:

"(A) Upon complaint in writing by any such public utility which has not filed, prior to the passage of such ordinance or ordinances, a written application with the public utilities commission pursuant to section 4909.18 or 4909.35 of the Revised Code covering the municipal corporation or group of municipal corporations, the public utilities commission shall give thirty days' notice of the filing and pendency of such complaint, and of the time and place of the hearing of it, to the public utility and the mayor of such municipal corporation or the mayors of such group of municipal corporations, which notice shall plainly state the matters complained of.

"(B) If at the time of passage of the ordinance or ordinances provided for in this section or in section 715.34, 743.26, or 743.28 of the Revised Code any such public utility has on file a written application with the public utilities commission pursuant to section 4909.18 or 4909.35 of the Revised Code covering such municipal corporation or group of municipal corporations, the passage of such ordinance or ordinances shall not operate to divest the public utilities commission of jurisdiction over the application of such public utility or any part thereof, unless such public utility files a written acceptance of such ordinance or ordinances as provided in section 743.28 of the Revised Code, whereupon the commission shall dismiss the application insofar as it covers such municipality or group of municipalities. If such public utility does not accept such ordinance or ordinances, it shall so notify the municipality or group of municipalities and the public utilities commission within thirty days after the passage of such ordinance or ordinances, and such notification shall be deemed to be the consent of such public utility to continue to furnish its product or service and devote its property engaged in so furnishing its product or service to such public use during the term so fixed by prior contract with such municipality or group of municipalities or by Chapters 4901., 4903., 4905., 4909., 4921., and 4923. of the Revised Code. Upon receipt of notification by such public utility that it does not accept such ordinance or ordinances, the public utilities commission shall proceed to rule upon the application which such public utility has filed pursuant to section 4909.18 or 4909.35 of the Revised Code and, as a part of such proceedings, shall fix and determine the just and reasonable rate, fare, charge, toll, rental or service to be rendered, charged, demanded, exacted, or collected for the product or service of such public utility within such municipality or group of municipalities."

Pursuant to R.C. 4909.34(B), an ordinance passed after the filing of an application does not divest the commission of jurisdiction over the application. However, R.C. 4909.34(A), which pertains to the instant proceeding, contains no like provision. Therefore, the General Assembly has not restricted the authority of municipalities to fix rates when an ordinance is passed prior to the filing of an application, as here. Because municipalities have clear constitutional and statutory authority to fix rates absent legislative restriction, the commission has no alternative but to proceed under the complaint and appeal, rather than under the application.

The commission essentially views the distinction between R.C. 4909.34(A) and 4909.34(B) as immaterial. It implies that because the statute does not expressly divest the commission of jurisdiction over a rate application when an ordinance is passed prior to the filing of the application, the commission may proceed under the application. This argument, however, assumes that the

commission has authority not provided by the General Assembly to proceed under the application and override municipally fixed rates. No such authority exists.

The city also contends that the commission violated R.C. 4909.39 because it failed to base the substituted rate on the allocated cost of serving customers within the city of Columbus. In part, R.C. 4909.39 provides:

"If the public utilities commission, after the hearing referred to in sections 4909.34 to 4909.36 of the Revised Code, is of the opinion that the rate, * * * so fixed by ordinance is or will be unjust, unreasonable, or insufficient to yield reasonable compensation for the service, the commission shall fix and determine the just and reasonable rate, * * * to be charged, demanded, exacted, or collected by such public utility during the period so fixed by ordinance, which period shall not be less than two years, and order the rate, * * * so fixed substituted for the rate, * * * fixed by ordinance. * * *

"No rate * * * so determined by the commission shall become effective until after the commission has ascertained and determined the valuation upon which such price, charge, toll, or rental is based. * * *

"*In fulfillment of its duties under this section as to what constitutes an unjust, unreasonable, or insufficient rate, * * * as to what constitutes a just and reasonable rate, * * * or, insofar as the form and structure of any rate, * * * is concerned, as to what may have the effect of causing it to become unfair and unreasonable, the decision of the commission shall be based on the factors stated in section 4909.15 of the Revised Code.*" (Emphasis added.)

We have previously recognized that where, as here, an application for a rate increase and a rate ordinance are pending, R.C. 4909.39 requires the commission to determine that portion of utility property that serves the municipality. In *Columbus v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 103, 12 O.O.3d 112, 388 N.E.2d 1237, Columbus & Southern Ohio Electric Company had filed an application for a rate increase and an appeal from a city of Columbus rate ordinance. We noted:

"Because the utility sought a rate increase for all its 'jurisdictional' customers [footnote omitted], it was necessary for the commission, pursuant to R.C. 4909.15, to value utility property 'used and useful for the convenience of the public' in order to determine the utility's rate base and establish a 'just and reasonable' rate. *Since the utility also sought relief from a Columbus ordinance, the commission was required, pursuant to R.C. 4909.39 to determine that portion of the above-described utility property which serviced Columbus residents.*" (Emphasis added.) *Id.* at 103, 12 O.O.3d at 112, 388 N.E.2d at 1237.

In *Consumers' Counsel v. Pub. Util. Comm.* (1980), 64 Ohio St.2d 71, 80–81, 18 O.O.3d 302, 308, 413 N.E.2d 799, 805, we repeated that the commission is required to allocate a portion of a public utility's rate base and related operating expenses to a municipality when the commission has pending before it a rate application and a complaint and appeal:

"In order to fix and determine service rates within Columbus pursuant to C&SOE's complaint and appeal from Ordinance No. 105–79, the commission was required to allocate a portion of C&SOE's rate base and related operating expenses to Columbus. See *Franklin Co. Welfare Rights Org., supra* [ (1978) ] (55 Ohio St.2d [1] ), at pages 6–7 [9 O.O.3d 1 at page 4, 377 N.E.2d 990 at pages 994–995]. Adopting C&SOE's methodology, the commission allocated C&SOE's rate base and related operating expenses uniformly throughout the entire service territory including Columbus."

In *Consumers' Counsel,* we recognized the propriety of establishing a uniform rate because the allocation methodology, which was found reasonable by the commission, reflected no cost of service difference between the city and the remainder of the service territory. In the instant case, the allocation methodology adopted by the commission reflected cost of service differences to the extent that, under the methodology, the typical Columbus customer would receive a $.60 decrease in monthly rates, as opposed to a $1.05 increase if rates were set on a uniform basis. The commission, in establishing rates for the city, did not perform an allocation based upon the methodology it adopted. Rather, it simply rolled Columbus into the uniform rate.

To defend not allocating rate base and expenses, the commission relies on a *rate design* principle announced in *Mahoning Cty. v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 40, 12 O.O.3d 45, 388 N.E.2d 739. In *Mahoning Cty.,* numerous townships filed a complaint with the commission alleging that Ohio Edison Company was employing discriminatory rate classifications by charging residential customers in the townships significantly higher rates than the rates charged for the same service in incorporated areas. Complainants sought equalization or uniformity of rates. On motion of Ohio Edison, the commission dismissed the complaint.

We reversed the commission and remanded the cause, explaining:

"R.C. 4905.31 permits a public utility to classify its customers for rate-making purposes, so long as the classification system utilized has a reasonable basis. * * * [Citation omitted.] Likewise, R.C. 4905.33, relied upon by the appellants, does not prohibit rate discrimination *per se;* rather, it prohibits charging different rates when the utility is performing ' * * * a like and contemporaneous service under substantially the same circumstances and

conditions. * * * ' R.C. 4905.35 is to the same effect, and prohibits ' * * * unreasonable prejudice or disadvantage * * *.'

"Absolute uniformity in rates or prices is not required by statute or case law. A reasonable differential or inequality of rates may occur where such differential is based upon some actual and measurable differences in the furnishing of services to the consumer.

"Although different criteria or classifications may be utilized in the establishment of reasonable utility rate structures, the basic underlying consideration is that of cost of service rendered. The differential in rates based upon the cost of serving municipalities in contrast with the cost of serving outlying unincorporated areas was recognized and approved in *Buckeye Lake Chamber of Commerce v. Pub. Util. Comm.* (1954), 161 Ohio St. 306 [53 O.O. 180, 119 N.E.2d 51]." *Id.*, 58 Ohio St.2d at 43–44, 12 O.O.3d at 47, 388 N.E.2d at 742.

We concluded that a utility may use population figures and density data to support a differential in costs of service rendered as between municipalities and more sparsely settled areas such as townships. We noted, however, that " * * * the rate differential as established by the utility between the municipalities and the unincorporated areas must have a reasonable basis. If it does not, then the rate difference constitutes an unlawful discrimination." *Id.* at 46, 12 O.O.3d at 48, 388 N.E.2d at 743. We concluded that the classifications, which were based on outdated population and density information, were unreasonable. Accordingly, we remanded the case to the commission " * * * to determine the more reasonable classification of the various townships and unincorporated areas, in order to more nearly effectuate the reasonable costs of serving the comparable areas with similar population and density patterns." *Id.* at 49, 12 O.O.3d at 50, 388 N.E.2d at 745.

There is a significant difference between rate-design principles and allocation principles. The former involves ensuring a reasonable basis for any classification made within a rate system; the latter involves compliance with R.C. 4909.15, which states in pertinent part:

"(A) The public utilities commission, when fixing and determining just and reasonable rates, fares, tolls, rentals, and charges, shall determine:

"(1) *The valuation as of the date certain of the property of the public utility used and useful in rendering the public utility service for which rates are to be fixed and determined.* The valuation so determined shall be the total value as set forth in division (J) of section 4909.05 of the Revised Code, and a reasonable allowance for materials and supplies and cash working capital, as determined by the public utilities commission.

"* * * *

"(2) A fair and reasonable rate of return to the utility on the valuation as determined in division (A)(1) of this section;

"(3) The dollar annual return to which the utility is entitled by applying the fair and reasonable rate of return as determined under division (A)(2) of this section to the valuation of the utility determined under division (A)(1) of this section;

"(4) The cost to the utility of rendering the public utility service for the test period less the total of any interest on cash or credit refunds paid, pursuant to section 4904.42 of the Revised Code, by the utility during the test period. * * *

"(B) The public utilities commission shall compute the gross annual revenues to which the utility is entitled by adding the dollar amount of return under division (A)(3) of this section to the cost of rendering the public utility service for the test period under division (A)(4) of this section * * *." (Emphasis added.)

The clear implication of the statute is that when considering municipal rates in an ordinance case, the commission must allocate valuation and cost factors on the basis of rendering service to the municipality. Yet, appellees argue that the commission may, in the end, simply roll the municipal rate into the company's general areawide rate structure, as if this were an application case after all. Such a result is inconsistent with R.C. 4909.34(A)'s careful preservation of the preeminence of the municipal ordinance passed when no general rate application is pending and of the separate procedure for a complaint and appeal in response to the ordinance.

Accordingly, we reverse the order of the commission in this respect and remand the cause for further proceedings in accordance with this opinion.

*Order reversed in part*
*and cause remanded.*

Moyer, C.J., Sweeney, Holmes, Wright and H. Brown, JJ., concur.

Douglas and Resnick, JJ., dissent.